THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHERLEY LINDSEY, a/k/a Jack Lindsey, Defendant-Appellant.
Fifth District   No. 5—85—0484

Opinion filed October 27, 1986.

James M. Radcliffe, of Sprague, Sprague & Ysursa, of Belleville, for appellant.

Randall J. Rodewald, State's Attorney, of Chester (Kenneth R. Boyle, Stephen E. Norris, and Kim G. Noffke, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Following a jury trial in the circuit court of Randolph County, defendant, Sherley Lindsey, a/k/a Jack Lindsey, was found guilty of aggravated criminal sexual assault, attempted aggravated criminal assault, and aggravated criminal sexual abuse. On appeal, defendant raises the following issues: (1) whether the trial court erred when it denied the defendant's petition for discharge based upon a statutory right to speedy trial; (2) whether the court properly excluded evidence on cross-examination that the victim may have been previously raped under section 115—7(a) of the Code of Criminal Procedure of 1963 (hereinafter referred to as the rape shield law) (Ill. Rev. Stat. 1985, ch. 38, par. 115—7(a)); (3) whether the trial court erred in permitting certified copies of docket sheets from the States of Missouri and Illinois to prove defendant's prior convictions for purposes of impeach-

ment; and (4) whether the trial court erred in permitting testimony of the caseworkers in light of the court's ruling on the defendant's motion *in limine*. We affirm.

At the trial, the following facts were adduced. In July of 1984 the defendant and his family moved from their residence on George Street to State Street in Chester, Illinois. Helping the defendant and his family to move was the victim, her mother, and three of her brothers. The victim's father could not assist in the move because he was working. During the move, the defendant agreed to stay at his house while his wife, Laura Lindsey, and his son, Raymond Lindsey, with the victim's mother and oldest of those brothers present transported the items to the other house. Since they used a station wagon to transport some of the items, approximately three trips were made to and from the houses. During those trips to the house on State Street, the defendant sexually assaulted the victim.

While the victim was in the defendant's care, the defendant fondled her breasts in the kitchen. Another incident occurred in Laura Lindsey's bedroom. At that time, he grabbed the victim by the wrists, threw her on the bed and began to fondle her breasts. However, the sexual assault was interrupted by one of the victim's brothers. He came into the bedroom, saw the defendant and the victim "rassling" around, and then tried to join them. The victim prevented any intervention by hitting her brother on the side of the head. During the incident the victim's brother noticed that the victim was laughing differently. Not long after he entered, the victim, defendant, and her brother left the bedroom.

The third incident occurred in Raymond Lindsey's bedroom. At that time, the defendant entered Raymond's bedroom, in which the victim was cleaning, threw her on the bed, took off his clothes, then hers, and then raped her. The victim did not tell anyone about the incident. Later, she told her oldest brother, then eventually she told her teacher, Susan Berner; Judith Dunning of the Department of Children and Family Services (DCFS); and Pat Blair of the Human Service Center.

Susan Berner, victim's teacher at Chester Community Grade School, stated that she had taught the victim for the past six years because her speciality is teaching the educable mentally handicapped (EMH). Victim is an EMH student. Berner stated that when the school started in the fall, she noticed that the victim had changed. Normally the victim was a shy, soft-spoken child who would play with the other children. However, during the school term following the incident, the victim became withdrawn; she would neither talk to any-

one, nor play with the other children. Victim wanted to be alone. The victim also began to fail her classes.

At the trial, Pat Blair stated that she provides out-client counseling for individuals, groups, or families with emotional problems. She counsels young victims of sexual abuse and works with children with learning disabilities. The victim was referred to her by DCFS after the investigation for sexual abuse. She discovered the victim to be functioning emotionally and socially at the age of a seven-year-old, although she is 12 years old. She also observed that the victim was very naive and shy and had a very limited knowledge of sex.

Judith Dunning, an investigator for DCFS, stated that she observed the victim to be incredibly shy. It took several interviews with the victim before she talked to Dunning about the incident with the defendant.

The victim's mother stated at the trial that her family and defendant's family had been friends for 14 or 15 years. She left the victim and victim's two younger brothers with defendant to watch. After the move, she noticed that the victim's behavior changed. She began to cry a lot, would not talk to her, did not want to be around others and was very nervous.

At the end of the trial, the jury returned a guilty verdict on all three offenses. From this verdict, the defendant appeals.

In defendant's first issue on appeal, he argues that he was not brought to trial within the statutory 120 days from the date of incarceration. Thus, he argues that the trial court should not have tried his case but should have dismissed it.

■ Under section 103—5(a) of the Code of Criminal Procedure of 1963, a defendant who is incarcerated "for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody." (Ill. Rev. Stat. 1985, ch. 38, par. 103—5(a).) Only where the court has determined that "the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day the court may continue the cause on application of the State for not more than an additional 60 days." (Ill. Rev. Stat. 1985, ch. 38, par. 103—5(c).) Whether the statutory prerequisite of section 103—5(c) was met rests within the sound discretion of the trial court, and, on appeal, this court will not disturb the trial court's determination unless there was a clear abuse of discretion. *People v. Garrett* (1982), 104 Ill. App. 3d 178, 181, 432 N.E.2d 1305, 1307.

■ First of all, under section 1.11 of "An Act to revise the law in

relation to the construction of the statutes," the first day of his incarceration is not counted. (Ill. Rev. Stat. 1985, ch. 1, par. 1012; *People v. Grant* (1982), 104 Ill. App. 3d 183, 432 N.E.2d 1129; *People v. Garrett* (1982), 104 Ill. App. 3d 178, 432 N.E.2d 1305.) In this case, the defendant was incarcerated on November 20, 1984, and released on recognizance bond on March 20, 1985. From the calculation in section 1.11, the defendant was released on the 120th day.

In the alternative, in view of the court's language at the hearing on the defendant's motion for continuance, the court granted the motion based upon section 103—5(c), which extends the speedy-trial period as much as 60 days. The court stated at the hearing:

"I think your witness is probably an important witness. Mr. Brown I am inclined to agree with your statement about delay and the length of time of course speaks for itself, but as you know this is the kind of case where the legislature passed legislation that makes the testimony of these investigators in these kind of situations a much more important part of the case, depending on what testimony they do have. They are allowed to testify to the facts, at least to corroborate the testimony of the victim. I think this is a case—there's not those many times the State asks for a continuance around here in this court and not too many situations where they are entitled to a continuance because of these reasons. But I think this sounds to me like a case where the State is justified in asking for a continuance to delay the case and stops the running of the statute as far as the 120 day rule would be concerned in this situation. I understand the 120 days has not run yet, but I understand it might depend on the circumstances.

Furthermore, the trial court's findings must also be read in conjunction with the filing dates of various court documents. The special prosecutor was not appointed until December 13, 1984; the State's motion for disclosure was filed on January 7, 1985, and answered on February 6, 1985; and the State's motion for continuance was filed on February 25, 1985. These facts reveal that once the special prosecutor was appointed, he exercised due diligence in obtaining evidence material to the case.

■■ However, the defendant makes significant the fact that the special prosecutor had not interviewed the victim at the time of the motion for continuance. This court finds that the prosecutor need not interview the victim again, after the initial complaint, until trial. It would be unreasonable to expect the special prosecutor to require the victim to discuss the sordid details of the incident more times than

necessary. Furthermore, since Dunning did the initial interviews and investigation of the victim after the defendant was charged, her access to the victim's confidence was important to the special prosecutor. The special prosecutor needed Dunning's intimacy with the victim and her family. Without her assistance and knowledge of the victim at the trial, the special prosecutor would have lost evidence material to the case. The other witness acquainted with the victim, Pat Blair, was called into the investigation of the case after Dunning's investigation. No other witness was involved from the beginning as Dunning had been. Thus, this court finds that the trial court properly granted the State's motion for the continuance under section 103—5(c). See *People v. Howard* (1985), 130 Ill. App. 3d 967, 474 N.E.2d 1345.

■ It is also established that the State need not explicitly state under which statute it seeks its continuance and that the trial court need not specify under what section the continuance was granted. These omissions are not dispositive of the requirement of section 103—5(c). (*People v. Howard* (1985), 130 Ill. App. 3d 967, 976-77, 474 N.E.2d 1345, 1352.) "To insist upon explicit recitation of words such as 'extension of time,' 'due diligence,' or any other particular language would exalt form over substance." *People v. Folenga* (1980), 83 Ill. App. 3d 210, 214, 404 N.E.2d 935, 938.

Illustrative of this court's opinion is *People v. Garrett* (1982), 104 Ill. App. 3d 178, 432 N.E.2d 1305. In *Garrett* this court considered whether the defendant's constitutional right to speedy trial was violated. The State in *Garrett* sought a "motion for continuance," stating that a material witness would be unavailable for trial. The motion did not indicate the statutory section under which it was brought. The trial court granted the motion "in accordance with section 114—4(c)(2)." Subsequently, the defendant filed a motion for discharge on speedy-trial grounds. However, the trial court denied the motion because it found that the State had exercised due diligence in obtaining the material evidence, that there were reasonable grounds to believe evidence would be available later, and that the continuance had been granted pursuant to section 103—5(c). On appeal, the *Garrett* court distinguished *People v. Toolate* (1978), 62 Ill. App. 3d 895, 379 N.E.2d 927, and found that the State had met the statutory prerequisites for a speedy trial.

■ In this case, the State did establish justification terms of due diligence. Since appointment of a special prosecutor, the State had exercised due diligence in obtaining material evidence—Judith Dunning—but could not present that material evidence because of unforeseen circumstances. Temporary absence of a witness is a valid ground

for continuance. (*People v. Young* (1981), 97 Ill. App. 3d 187, 190, 423 N.E.2d 221, 224.) Furthermore, the trial court granted the continuance well within the statutory period of 60 days. Thus, this court finds that the trial court did not abuse its discretion when it denied the defendant's petition for discharge based upon the speedy-trial statute.

■ The defendant's next issue on appeal is whether the trial court properly excluded evidence that the victim may have been previously raped under section 115—7(a) of the Code of Criminal Procedure of 1963 (the rape shield law) (Ill. Rev. Stat. 1985, ch. 38, par. 115—7(a).) However, the State argues that there was no evidence at trial that the victim had previously been raped.

The defendant's issue involves the following direct examination testimony of Susan Berner, the victim's teacher at Chester Community Grade School:

"Ms. Susan Berner: I've taught in Chester for six years.

Mr. Gerald Sims [special prosecutor]: Now do you know a 13-year-old girl from Chester, [the victim]?

Ms. Berner: Yes, I do.

Mr. Sims: And how long have you known [the victim]?

Ms. Berner: Six years. She's been my student every year.

Mr. Sims: And what type of child is [the victim]?

Ms. Berner: She is a very soft-spoken child, she is very shy. She tends to bottle her emotions up. She is a very sweet girl.

Mr. Sims: Now, did you have—when she came back to school this year, did you have occasion to see her when school started?

Ms. Berner: Yes, I did.

Mr. Sims: When did school start in Chester last fall?

Ms. Berner: In August.

Mr. Sims: And did you notice any changes in [the victim]?

Ms. Berner: A very definite change in [the victim]. She was very withdrawn. She would hang her head down, she would not talk. When she would go out on the playground or anywhere, she would always be alone, which was not like [the victim] at all. For the past five years she was a bubbly sort of girl and she would play with others, and now she wanted to hang out on the porch and sit out and look at a book. She didn't want anything to do with anybody.

Mr. Sims: Was there any problems with her grades or anything?

Ms. Berner: There wasn't before, but this year she is failing even in classes that she was doing well in.

Mr. Sims: Now did you ever discuss this problem, the changes in her appearance and her grades with her?

Ms. Berner: Yes, I did.

Mr. Sims: Now, without going into any details, can you tell us the substance of what the problem is?

Ms. Berner: [The victim] said she had been raped."

During the cross-examination of Ms. Berner, defense counsel attempted to elicit information of any prior rapes of the victim. The following exchange took place:

"Mr. Richard Brown [defense counsel]: And you state that you talked with [the victim] and she told you that she had been raped over the summer, is that correct?

Ms. Berner: Yes.

Mr. Brown: Did she indicate who the person was that raped her?

Ms. Berner: Yes, she did. She said it was Mr. Lindsey.

Mr. Brown: Did she indicate that that was the only person—

Mr. Sims: Objection. Can I ask that we approach the bench?

The Court: Yes, sir.

(An off-the-record discussion was held at the bench.)

The Court: Objection sustained.

Mr. Brown: I have no further questions of this witness."

From the testimony, this court finds that there was neither a previous rape as defendant argues nor any offer of proof by the defendant regarding what would have been elicited had he been allowed to further cross-examine Berner. Berner's testimony reveals that the only person implicated by the victim was the defendant.

Furthermore, this court finds that any evidence regarding whether the victim had previously been raped by anyone else is inadmissible under the rape shield law. The rape shield law provides:

"In prosecutions for aggravated criminal sexual assault, criminal sexual assault, aggravated criminal sexual abuse or criminal sexual abuse, the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused." (Ill. Rev. Stat. 1985, ch. 38, par. 115—7(a).)

The purpose behind the law is to deny the defendant an opportunity to harass and humiliate the victim at trial and divert the attention of the jury to issues not relevant to the controversy. *People v. Buford* (1982), 110 Ill. App. 3d 46, 52, 441 N.E.2d 1235, 1240.

In this case defense counsel's attempt to elicit evidence of other possible rapes was, for all purposes, an attempt to confuse the issues

at trial. This attempt by defense counsel is well within the intent of the legislature under the rape shield law. Such attempt by defense counsel, whether with or without any offer of proof, is prohibited by the rape shield law. Thus, this court finds that the trial court did not abuse its discretion when it prohibited defense counsel's line of questioning.

■ The defendant's next issue on appeal is whether the trial court erred when it admitted into evidence certified copies of circuit court docket sheets from the States of Missouri and Illinois to prove the defendant's prior convictions for purposes of impeachment. The defendant argues that the four exhibits (the certified copies) were not properly authenticated copies.

It is well established in Illinois that a prior conviction can be proved only by the record or an authenticated copy showing the caption, the return of the indictment in open court by the grand jury, the indictment and arraignment of the defendant, the impaneling of the jury and its verdict or the waiver of the jury, and the final judgment of the court. *People v. Lane* (1948), 400 Ill. 170, 173, 79 N.E.2d 65, 66; *People v. Moore* (1979), 72 Ill. App. 3d 462, 464, 391 N.E.2d 139, 141.

■ In this case the trial court properly admitted the docket sheets. The docket sheets in question were certified by the circuit clerk (see Ill. Rev. Stat. 1985, ch. 110, par. 8—1202) and revealed the caption of the case, the filing of the information, waiver of arraignment by the defendant, defendant's plea of guilty, and the final judgment of the court. Thus, this court finds that the requirements of Illinois case law have been met.

■ The defendant's next issue on appeal is whether the trial court erred in permitting testimony of the case workers in violation of the court's pretrial granting of a motion *in limine*. The court ordered the State to refrain from going into the details of reports made by the victim. The court further stated that "[w]hatever is elicited during the trial, then, will come under the corroboration rule of the Criminal Code."

The defendant contends that the following excerpts were violative of the prohibitive order. The excerpts are from the testimony of Pat Blair, a caseworker, and Susan Berner, the victim's teacher. The first excerpt at issue is as follows:

"Mr. Sims: And without going into any detail, can you just tell us what she did tell you, what happened to her.

Ms. Blair: Yes, she told me that she was at a trailer and that Mr. Lindsey sexually abused her. He threw her down on

the bed. Well, first of all, he was fondling her in the kitchen, and she got away from him. And I think at that point her mother came back."

The second excerpt also at issue in Blair's testimony is as follows:

"Ms. Blair: The Department of Children and Family Services. They investigate allegation of sexual abuse, often times when they see kids that have been sexually abused, they will refer them for out-client counseling.

Mr. Sims: And [the victim] became your client in that fashion?

Ms. Blair: Yes."

The defendant also argues that Susan Berner's, victim's teacher's, answers to prosecutor's comments also violated the motion *in limine* order. Berner's responses regarded questions about the victim's declining grades and apparent personality change in the fall. When the prosecutor asked her what the problem was, Berner replied, "[The victim] said she had been raped."

The relevant section, section 115—10 of the Code of Criminal Procedure of 1963, provides:

"In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child that he or she complained of such act to another; and

(2) testimony by the person to whom the child complained that such complaint was made in order to corroborate the child's testimony." (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.)

By reason of this statutory exception to the hearsay rule for statements made by a victim of a sex offense against a child, this court does not find any error in the testimony of the witnesses regarding statements made to her by the victim complaining about the incident. To the extent that the testimony of Blair may have gone beyond the fact that a complaint was made, her testimony of the victim's description of the incident constituted only harmless error where the facts revealed by Blair were strongly established by competent testimony of the victim herself. *People v. Ford* (1985), 139 Ill. App. 3d 894, 902, 488 N.E.2d 575, 578.

■■■ However, the defendant argues that the State committed reversible error when it exceeded the scope of the order granting the motion *in limine*. This court recognizes that a motion *in limine* is a

pretrial motion in which the movant seeks an order preventing the presentation of inadmissible evidence at trial. "An *in limine* order protects the moving party from any prejudicial impact that might result simply from asking questions and making objections before the jury." (*Lundell v. Citrano* (1984), 129 Ill. App. 3d 390, 396, 472 N.E.2d 541, 544-45.) In criminal cases the use of *in limine* motions is encouraged to exclude collateral or extraneous matters. (*People v. Clark* (1984), 129 Ill. App. 3d 374, 377, 472 N.E.2d 814, 817.) However, these motions must not unduly restrict the opposing party's presentation of its case. 129 Ill. App. 3d 374, 472 N.E.2d 814.

■■ In this case the trial court did not abuse its discretion when it granted the defendant's motion *in limine* on restricted grounds. The trial court could not completely restrict the State's presentation of its evidence without interfering with the exception to the hearsay rule. In examining these excerpts, this court does not find that the State violated the *in limine* order. In the first excerpt and Berner's answer, the testimony simply repeated the victim's words in complaining about the incident and did not amount to reversible error. (See *In re C.K.M.* (1985), 135 Ill. App. 3d 145, 481 N.E.2d 883.) In the second excerpt, and Berner's response, the testimony did not disclose details of the victim's allegations of sexual abuse and was not a statement on the ultimate fact question. If there was any error, it was harmless.

■■ The defendant also argues that the impact of the first excerpted testimony was not "diluted" because the court gave no admonition to the jury whatsoever that they should not consider the answer given by Ms. Blair. This court recognizes that there is no requirement on the part of the trial court to do so where the defendant did not move to strike the reference or request that the jury be admonished or instructed to disregard it. (*People v. Wallace* (1983), 114 Ill. App. 3d 242, 251, 448 N.E.2d 910, 917.) Since the testimony complained of was isolated and properly remedied or "diluted" by the trial court instructing the jurors to disregard questions and answers objected to with Illinois Pattern Jury Instruction, Criminal, No. 1.01 (2d ed. 1971) this court finds no merit in the defendant's argument.

For the foregoing reasons, the judgment of the circuit court of Randolph County is affirmed.

Affirmed.

KASSERMAN, P.J., and KARNS, J., concur.