THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESSE DAVIS, Defendant-Appellant.

Fourth District   No. 4—00—0285

Opinion filed April 2, 2001.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

John P. Schmidt, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and David A. Hibben, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

In October 1999, a jury convicted defendant of aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 1996)) and unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 1998)). The trial court sentenced defendant to a six-year prison term for aggravated discharge of a firearm and to a concurrent three-year term for unlawful possession of a weapon by a felon. Defendant appeals, arguing (1) the State failed to present sufficient evidence to support conviction; (2) the trial court erred in failing to allow him to stipulate to his prior felony; and (3) he received ineffective assistance of counsel. We reverse and remand with directions.

I. BACKGROUND

In July 1999, the State charged defendant with aggravated discharge of a firearm and armed violence (720 ILCS 5/33A—2 (West

1998)). The State later dismissed the charge of armed violence. In October 1999, the State added the charge of unlawful possession of a weapon by a felon. In October 1999, the jury trial began.

Barbara Downs testified in July 1998 two men came to her home. They stated her daughter, Della Downs, needed to come up with $100 or "she was dead." (Barbara was not able to positively identify defendant as one of the two men; Darla Downs, Barbara's other daughter who was also present at the time, identified defendant as one of the two men who came to her mother's home.) Darla, her sister Della, and two friends, Andrew White and Kenneth Dent, drove to the home of Marcus Dale, where defendant was staying. Defendant and Della had an ongoing dispute concerning money.

Darla testified they parked just in front of Marcus's home. A number of people were present when they arrived. Defendant and Terry Dale, Marcus's brother, approached the vehicle. Defendant asked Della if she had his money and she said, "No." Darla testified defendant walked back to another car and returned with a gun. She stated she then began to drive away and heard several shots fired, although she did not see defendant shoot the gun. She identified several photographs of her car showing bullet strikes. She had never met defendant before this occasion, and the police did not show her any photographs or lineups concerning this incident. Also, according to her original statement to police, Darla had seen Marcus also in possession of a firearm. At trial, she was unclear what her prior statement to police was.

Della testified about the 1999 Fourth of July weekend, when she had traveled with defendant and Marcus to a concert. After this trip, defendant accused her of stealing money from him. Upon arriving at Marcus and Terry's house, Della said she told defendant she did not have his money. She stated defendant walked away while she was still talking to Terry. Darla then pulled into the street very quickly, and Della heard three shots. Della stated she looked back and saw defendant in the middle of the street with his arm raised. She described defendant as wearing a white tank top and black pants or shorts. She testified she did not actually see defendant fire the gun.

Terry Dale testified he and defendant approached the vehicle when it pulled up and began talking to Della. He stated defendant then walked away and returned with a gun. Defendant began shooting at the car as it drove away. Terry testified defendant then walked past him and remarked he was out of bullets. Terry admitted he was on probation for aggravated criminal sexual abuse (720 ILCS 5/12—16 (West 1998)). Cross-examination revealed Terry gave police a different version of events at the time. However, the differences mostly

concerned defendant's movements during the shooting. Cross-examination further revealed Terry's conviction for distribution of a controlled substance, as well as the defense theory he was lying to protect himself or his brother. The defense argued both Terry and Marcus were felons and they had an incentive to lie so as not to be charged with similar crimes.

Dent testified defendant argued with Della when they arrived. Defendant walked away but returned with a gun in his hand. Dent stated as defendant walked back toward the car, Darla began driving away and defendant was shooting at the car. Dent heard three or four shots and had not seen anyone else at the scene with a gun. Dent did not actually see defendant fire the gun because he was ducking inside the car when someone fired the shots; rather, he saw defendant running after the car with his hand raised before he heard the shots. Dent did not identify defendant until a week before trial and could not pick defendant out of a photographic array. In addition, Dent originally told the police defendant went to the house, not to a car, to retrieve the gun.

Vicki Griffiths testified she lived across the street from the Dale residence. She stated she saw a white vehicle pull up and park in front of the home. She saw a man talking to a young woman inside the car and watched as the car sped off and the same man chased after the car, shooting at it. She called police and gave them a description of the shooter. She stated the shooter was not Marcus or Terry Dale. She described the shooter as a "black male, five foot six to five seven, around a hundred and fifty, a hundred sixty pounds, somewhere in there. He had a white short-sleeved T-shirt [on]." Griffiths identified defendant at trial as the man who fired the shots. Cross-examination revealed the police did not ask Griffiths to view any lineups or photographs of suspects.

Police officers testified they obtained a search warrant and found a .22-caliber revolver in Marcus Dale's basement and they discovered bullets outside in a grill. A lone fingerprint was found on the trigger guard to the gun, which did not match either defendant or Marcus.

The trial court held a hearing on defendant's motion *in limine* concerning the circumstances of his flight and arrest. The trial court granted the motion *in limine* with respect to testimony concerning police observations of defendant's vehicle and a police chase of the vehicle after the incident.

Jim Cour, an employee of the Sangamon County Adult Probation and Court Services Department, testified defendant had been convicted of unlawful possession of a stolen vehicle (625 ILCS 5/4—103(a) (West 1996)). The jury found the defendant guilty of unlawful possession of a weapon by a felon and aggravated discharge of a firearm.

In January 2000, defendant filed a posttrial motion, arguing the trial court erred by permitting the State to introduce evidence of defendant's prior felony conviction in front of the jury. The trial judge denied the motion. The trial court sentenced defendant as stated. This appeal followed.

## II. ANALYSIS

We first consider defendant's contention the trial court erred in admitting evidence of his conviction of possession of a stolen motor vehicle because he offered to stipulate to his prior felony conviction. In support of his argument, defendant suggests Illinois should follow the decision of the Supreme Court in *Old Chief v. United States*, 519 U.S. 172, 136 L. Ed. 2d 574, 117 S. Ct. 644 (1997). In light of this court's recent decision in *People v. Peete*, 318 Ill. App. 3d 961 (2001), we agree.

Because the evidence in this case was not overwhelming, the trial court's failure to accept defendant's stipulation was an abuse of discretion constituting reversible error.

## III. CONCLUSION

We reverse defendant's conviction in accordance with Supreme Court Rule 23(c)(2) (166 Ill. 2d R. 23(c)(2)) and conclude we therefore need not address defendant's other issues. We note, however, the evidence suffices to permit retrial without offending double jeopardy, and we remand to the trial court for a new trial consistent with this order.

Reversed and remanded.

MYERSCOUGH, J., concurs.

PRESIDING JUSTICE STEIGMANN, specially concurring:

Although I concur with the opinion in this case, I write this special concurrence to address an issue this court discussed in *Peete*, namely, the application of the supreme court's decision in *Atkinson*. In *Peete*, this court rejected the State's reliance on *Atkinson* as a basis for not using the *Old Chief* rationale on the ground that *Old Chief* dealt with prior convictions as an element of the crime, whereas *Atkinson* dealt with prior convictions for impeachment purposes. *Peete*, 318 Ill. App. 3d at 968. Although that observation is correct, this nonetheless is largely a distinction without a difference.

The fundamental policy underlying both the United States Supreme Court's decision in *Old Chief* and the mere-fact method of impeachment by prior conviction is the same: permit the State to introduce only such prior conviction evidence as is necessary to achieve the State's legitimate goals without "dirtying up" the defendant. For

the reasons discussed by the dissent in *Atkinson*, the supreme court's decision in that case, rejecting the mere-fact method, is badly flawed and should be reconsidered. *People v. Atkinson*, 186 Ill. 2d 450, 464-72, 713 N.E.2d 532, 539-42 (1999) (Rathje, J., dissenting). Given the frequency with which efforts occur to impeach testifying defendants with their prior convictions and the importance that the rules governing these efforts be sound, one hopes that the new majority of the Supreme Court of Illinois will use the opportunity, when reviewing this court's decisions to apply *Old Chief* to Illinois law, to overrule *Atkinson*.