THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AVELL A. WALKER, Defendant-Appellant.

Second District    No. 2—01—0431

Opinion filed August 27, 2002.—Modified on denial of rehearing October 24, 2002.

O'MALLEY, J., specially concurring in part and dissenting in part.

G. Joseph Weller, of State Appellate Defender's Office, and Josette Skelnik, of Law Offices of Josette Skelnik, both of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Peter N. Stein, of Lincolnshire, for the People.

JUSTICE CALLUM delivered the opinion of the court:

Following a jury trial, defendant, Avell A. Walker, was convicted of the unlawful sale of a firearm (720 ILCS 5/24—3(A)(a) (West 2000)) and the unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 2000)). He was sentenced to concurrent terms of 42 months' imprisonment. He appeals, arguing that the trial court erred in (1) admitting a prior consistent statement as substantive evidence; (2) answering a question from the jury with an instruction that injected new issues into the case; and (3) admitting evidence of the precise felony of which defendant previously had been convicted. We reverse and remand for a new trial.

## I. FACTS

The indictment alleged that defendant committed the unlawful sale of a firearm when he "knowingly gave a *** pistol *** to Aprylle Watson, a person under 18 years of age." The indictment further alleged that defendant "knowingly possessed" that firearm when he had been "convicted of a felony under the law of Illinois."

Before trial, defense counsel made the following motion *in limine*:

"The State will introduce evidence of prior conviction for possession of controlled substance which is *** going to lead to the jury considering the defendant a drug dealer, that's why I didn't want it mentioned ***. There is—one of the charges here is possession of weapon by a felon ***.

I will either ask that the fact that Mr. Walker has a prior felony, I am willing to stipulate to it ***. But I don't think—the fact that he needs to be called a felon is necessary. I think by stipulating to it, that's sufficient and is—otherwise, I have a motion *in limine* to exclude *** [t]he fact of the prior conviction."

The State refused to stipulate, asserting that "the jury has to be made aware that the defendant is a felon. That's *** an element required to prove that offense beyond a reasonable doubt." The court reserved ruling on the motion *in limine*.

At trial, the State began its opening statement as follows:

"Ladies and gentlemen, this case is about a drug deal gone bad and a man who is willing to take any step possible to make sure that he got paid for the drugs he sold. That man is the defendant."

The State's first witness was Aprylle Watson, who testified that she was 17 years old and had been granted immunity for her testimony. On September 15, 2000, about 9 p.m., she and defendant, whom she was dating, drove to Bolingbrook to pick up Crystal Watson, Aprylle's sister. After they picked her up, the car sustained a flat tire. A state trooper arrived, and defendant gave Aprylle a plastic bag of crack cocaine, which Aprylle put in her pocket.

Aprylle testified that the flat tire was fixed and that defendant told her to drive him to an apartment building in Woodridge. She parked outside the building, and defendant told her to blow the horn. A man exited the building, approached the car, and spoke with defendant. The man then returned to the building, 10 minutes passed, and defendant told Aprylle to drive him to a gas station. At the station, defendant exited the car, made a phone call, and told Aprylle to take him back to the apartment building. Defendant entered the building and returned about five minutes later. He was angry. He told Aprylle to drive him to his residence in Bolingbrook. Upon arriving, defendant went inside and returned wearing gloves and holding his waist. Aprylle suspected that defendant had a gun. Defendant told Aprylle to take him back to the apartment building.

Aprylle testified that, outside the building, defendant saw the man he had met earlier. Defendant exited the car and began arguing with the man. As they headed into the apartment building, defendant asked Aprylle to accompany him. Aprylle complied. Inside the building, as the man knocked on the door of an apartment, defendant looked out a window to the parking lot, and his eyes began rapidly moving back and forth. Defendant opened Aprylle's coat, put a heavy object in it, and told Aprylle to return to the car. When Aprylle exited the building, police officers pointed their guns at her and told her to put her hands up. Aprylle lay on the ground and told the police that she thought she had a gun in her pocket. The police removed the object, which was in fact a gun. The State introduced a gun into evidence, and Aprylle identified it as the gun that the police had removed from her coat.

Aprylle testified that she was taken to the police station, where she told an officer that the gun was hers. She lied because she was scared. Later, she told the truth, which was the account she gave in her testimony. When she told the police the truth, she had not yet received immunity.

On cross-examination, Aprylle testified that she wrote a statement after telling the police the truth. However, she did not write in that statement that defendant gave her anything when the car broke down. She also did not write that defendant was holding his waist when he exited his residence; instead, she wrote that he "had a gun." She also wrote that defendant "handed" her the gun, though he actually put it in her coat pocket.

Aprylle testified that she had never told anyone that she was related to defendant. She then acknowledged that, when she visited defendant in jail, she signed in as defendant's cousin. She explained that she thought that only a relative could visit him.

On redirect examination, Aprylle testified that nothing in her written statement was false. She further stated that defendant had gone to the apartment building "to get his money."

Crystal Watson gave testimony consistent with Aprylle's, but Crystal added the following details. Before the car sustained the flat tire, defendant showed Crystal a plastic bag of crack cocaine. After the flat tire was fixed, defendant's pager went off, and defendant asked Aprylle to drive him to Woodridge. When defendant first spoke to the man who met him outside the apartment building, the man said that he was going to "get the money." The man then went inside but did not return.

Crystal testified that, after defendant exited his residence, he sat in the backseat of the car. Crystal was in the front passenger seat. As Aprylle drove them back to the apartment building, Crystal saw that defendant had a gun in his lap. While leaning into the backseat, Crystal cocked the gun and held it for about two minutes. She did not discuss the gun with Aprylle, and Aprylle did not see it. The gun was the one in evidence.

Crystal testified that, after Aprylle accompanied defendant into the apartment building, the police arrived, and Crystal ducked down in the car. She looked up to see Aprylle come out of the building with her hands up. An officer approached the car and ordered Crystal to exit.

Crystal testified that she was taken to the police station, where she wrote a written statement that was false. She lied because she was scared. Later, she told the truth and wrote a correct statement. She had not been promised anything in exchange for her truthfulness. She subsequently received immunity for her testimony.

On cross-examination, Crystal admitted that, in her second written statement, she inaccurately stated that she and Aprylle had picked up defendant at about 9 p.m. She did not mention gloves. After she and Aprylle made their statements, the police released them. On their way home, Aprylle told Crystal that Bruce was the name of the man at the apartment building. Crystal testified that she did not know Bruce's name until then. She then acknowledged that she had referred to the man as Bruce in her second written statement. She reiterated that she had been granted immunity for her testimony.

At a sidebar, the State moved to admit Crystal's second written statement as substantive evidence. The court stated that it would "allow it."

On redirect examination, Crystal stated that her testimony was true. She did not recall when she learned Bruce's name. The State formally moved to admit the second written statement, but the court

reserved ruling pending a review of the statement. On further cross-examination, Crystal testified that she had been around guns before and had been shot.

William Hoogland, a Woodridge police officer, testified that he was dispatched to the apartment building in response to a report of two men fighting, one of whom was "possibly armed with a gun." Outside the building, Hoogland saw a second officer, Shannon, with his gun drawn on a man named Bruce Badger. He also saw Aprylle exiting the building, and he ordered her to the ground. He then saw defendant coming from behind the building, which had an exit in the back. A third officer, Freeman, ordered defendant to the ground. Shannon apprehended Crystal. A fourth officer, Stefanson, retrieved the gun from Aprylle's coat and gave it to Hoogland. The gun had been cocked. The gun was the one in evidence.

On cross-examination, Hoogland testified that no drugs or gloves were found on defendant or behind the building. He acknowledged that his police report stated that Aprylle had exited the building ahead of Badger. He interviewed Aprylle at the police station, and Aprylle never told him that the gun was hers. She never spoke of gloves. She did say that, while she, Crystal, and defendant were in the car, they all played with the gun. Later, Aprylle and Crystal were released without being charged with any crimes.

Outside the jury's presence, the State introduced a certificate of defendant's 1999 felony conviction of the unlawful possession of a controlled substance with the intent to deliver. Defense counsel moved "to bar it, whereas [he] would stipulate to that fact." The court ruled that it would allow the certificate, asserting that the State had "a right to present evidence that *** the defendant was convicted of the felony *** of unlawful possession of a controlled substance with the intent to deliver." Before the jury, the State introduced the certificate, naming the felony, and the court admitted it over defendant's objection.

Again outside the jury's presence, the State renewed its motion to admit Crystal's second written statement. Defendant objected on hearsay grounds. The State responded that the statement was admissible as substantive evidence because, in examining Crystal, defendant had suggested that her immunity had given her a motive to fabricate. The court admitted the statement, which was consistent with Crystal's testimony but added the following detail. When Bruce first met defendant outside the apartment building, Bruce "got three $50 *** rocks from" defendant.

The State rested, and defendant called Leroy Keith of the Du Page County sheriff's crime laboratory. He testified that he had examined

the gun in evidence and had found no fingerprints on it. The court granted defendant's motion to admit Crystal's first written statement, and defendant rested.

During its closing argument, the State argued that defendant "gave that crack to that guy and didn't get his money back." The State continued:

> "[Defendant] went to get that gun to get paid. It's not like this gun popped up out of nowhere or fell from the sky or somebody threw it at him, and he momentarily caught it and had to throw it away. That's not the possession like that. He possessed it in his waist band. He knew what he was doing.
>
> *** It was in his waist band, in his lap, and in his hands."

In his own argument, defendant countered that Aprylle and Crystal had lied to the jury "to save their own neck[s]." In rebuttal, the State argued:

> "Admitted into evidence is the second written statement of *** Crystal Watson ***. And that statement tells the truth. It was made right after the first statement."

The State concluded by asking the jury to find defendant guilty of selling a firearm and "possessing a weapon by a felon in his prior conviction of unlawful delivery [sic] of a controlled substance."

The court instructed the jury that a person commits the unlawful possession of a weapon by a felon when he, "having been previously convicted of *** unlawful possession of a controlled substance with intent to deliver, knowingly possesses a firearm on or about his person." The court did not define "possesses." The jury retired. In addressing what evidence would go back to the jury room, the court stated that Crystal's written statements would not go back "at this point."

During its deliberations, the jury requested Aprylle's and Crystal's written statements. Defendant objected, asking that the jury be required to rely on "the evidence of what the statements contained." The court told the jury that Aprylle's statement was not in evidence, but it sent back both of Crystal's statements.

Later, the jury asked:

> "When possession is concerned, does that [mean] that the gun was in the car and he knew about it? Or does that mean that he had to have physical contact with it? And if so, does physical contact mean that he just has to touch it to be [on] or about his person or does he have to hold and control the weapon?"

The court suggested instructing the jury on actual, constructive, and joint possession. Defendant objected, arguing that there was no issue of constructive or joint possession. The court ruled that the jury's

question was a legal one that it was obligated to answer. The court instructed the jury:

"Possession may be actual or constructive. A person has actual possession when he has immediate and exclusive control over a thing. A person has constructive possession when he lacks actual possession of a thing but he has both the power and the intention to exercise control over a thing either directly or through another person.

If two or more persons share the immediate and exclusive control or share the intention and the power to exercise control over a thing, then each person has possession."

See Illinois Pattern Jury Instructions, Criminal, No. 4.16 (4th ed. 2000).

Subsequently, the jury sent the court two notes containing five questions about the meaning of "give." The court responded to each note. After further deliberations, the court observed that, though the trial had lasted about 3½ hours, the jury had been deliberating for about 6 hours. The court sent the jurors home and brought them back on a later date. Finally, the jury found defendant guilty of both crimes.

In a posttrial motion, defense counsel asserted, *inter alia*, that "[t]he court erred in not allowing the defendant to stipulate to his felony conviction." In support, counsel cited *Old Chief v. United States*, 519 U.S. 172, 136 L. Ed. 2d 574, 117 S. Ct. 644 (1997), and *People v. Peete*, 318 Ill. App. 3d 961 (2001). In rejecting counsel's assertion, the court stated:

"[W]ith respect to that prior conviction, it is an element [of] the offense, and although there are ways to skirt around what the conviction was for, I am not aware of any case law that provides that you can keep from the jury, the fact that he is a convicted felon ***.

*** [B]ased upon the cases presented, the defendant would be able to stipulate that it was a felony conviction, [but] the argument that was made was that there would be a stipulation so that it wouldn't be presented to the jury that the defendant was a convicted felon. *** And I don't believe there is case law to support that position."

Defendant's posttrial motion was denied, he was sentenced, and he appealed.

## II. STIPULATION TO PRIOR CONVICTION

■ Although defendant raises this issue last, we elect to address it first. Defendant argues that, because he offered to stipulate that he had been convicted of a felony and objected to the naming of the felony, the trial court erred in admitting evidence that the felony was the

unlawful possession of a controlled substance with the intent to deliver. We may reverse a trial court's evidentiary ruling only if the court abused its discretion. *People v. Anderson*, 325 Ill. App. 3d 624, 632 (2001).

■ Preliminarily, the State contends that defendant waived this issue. The State concedes that, by citing *Old Chief* and *Peete*, defendant at least "tangentially" raised the issue in his posttrial motion. However, the State asserts that, at trial, defendant did not attempt to prevent the jury from hearing only the name of his prior felony. Rather, according to the State, defendant attempted to prevent the jury from hearing that he had been convicted of any felony at all. In denying defendant's posttrial motion, the trial court adopted the State's view. Nevertheless, in his reply brief in this court, defendant insists that, even at trial, he attempted to exclude only the name of the felony. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve an issue for review, a defendant must raise the issue at trial and in a posttrial motion).

Before trial, defense counsel stated that his underlying concern was that the prior conviction would lead the jury to believe that defendant was "a drug dealer." That comment suggests that counsel was principally concerned with the nature of the felony, rather than defendant's status as a felon, Accordingly, counsel offered to stipulate that defendant was a felon. However, counsel then moved to exclude "[t]he fact of the prior conviction," rather than merely the fact of the felony of which defendant had been convicted. Similarly, during trial, counsel moved "to bar" the certificate of defendant's conviction, which obviously evinced not only the name of the felony but also defendant's status as a felon.

This case demonstrates the care with which a party or his counsel should craft his requests to the court. Although defense counsel may have raised the substance of this issue at trial, at a minimum he should have raised the issue more precisely. In any event, assuming that a waiver occurred, we accept the State's invitation to review the issue under the plain error rule. See 134 Ill. 2d R. 615(a). Under that rule, we may review a waived issue if the evidence is closely balanced or if the alleged error raises a substantial risk that the defendant was denied a fair trial. *People v. Shaw*, 186 Ill. 2d 301, 326-27 (1998). As we will explain, we believe that both conditions apply here.

On the merits, the parties agree that this issue turns on our assessment of *Old Chief*. There, the defendant was charged with the possession of a firearm by a felon (18 U.S.C. § 922(g)(1) (1994)), along with assault with a dangerous weapon and the use of a firearm in relation to a violent crime. He previously had been convicted of the felony

of assault causing serious bodily injury. Before trial, he offered to stipulate that he had been convicted of a felony, and he objected to the naming of the felony. The government refused to stipulate, and the trial court admitted evidence of the precise felony. The defendant was convicted on all counts, and he appealed.

The Supreme Court noted that the name of the felony was relevant, as it made more probable the defendant's status as a felon. Nevertheless, under Rule 403 of the Federal Rules of Evidence (28 U.S.C. app. Fed. R. Evid. 403 (1994)), relevant evidence may be excluded when its probative value is substantially outweighed by the danger of unfair prejudice. Unfair prejudice may arise when evidence tends to induce the jury to convict on an improper basis, such as the defendant's criminal history. Meanwhile, the probative value of evidence may depend on the availability of other evidence on the same point.

In considering the "felon" element of the possession of a firearm by a felon, the Court stated that "there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." *Old Chief*, 519 U.S. at 185, 136 L. Ed. 2d at 591, 117 S. Ct. at 652. Although the risk varies with the facts, it is "substantial whenever the official record offered by the Government would be arresting enough to lure a juror into a sequence of bad character reasoning." *Old Chief*, 519 U.S. at 185, 136 L. Ed. 2d at 591, 117 S. Ct. at 652. For example, as in *Old Chief*, if the prior felony is "similar to other charges in a pending case[,] the risk of unfair prejudice would be especially obvious." *Old Chief*, 519 U.S. at 185, 136 L. Ed. 2d at 591, 117 S. Ct. at 652.

Turning to the probative value of the name of the felony, the Court noted that the defendant's proposed admission was conclusive evidence of the "felon" element. Indeed, because the element requires proof of the defendant's status as a felon, rather than proof of the precise felony, an admission to the status is just as probative as the name of the felony. The only relevant difference is that the admission carries no risk of unfair prejudice. Thus, in *Old Chief*, "as in any other [case] in which the prior conviction is for an offense likely to support conviction on some improper ground, the only reasonable conclusion was that the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available." *Old Chief*, 519 U.S. at 191, 136 L. Ed. 2d at 594-95, 117 S. Ct. at 655.

In Illinois, only the Fourth District of the Appellate Court has considered whether to follow *Old Chief*. In *Peete*, the defendant was

charged with the unlawful possession of a weapon by a felon. He offered to stipulate that he was a felon, and he objected to the naming of the prior felony. The State refused to stipulate, and the trial court admitted evidence that the prior felony was residential burglary. The defendant was convicted, and he appealed.

The appellate court stated that *Old Chief* was not binding because it involved the interpretation of a federal statute. Nevertheless, observing that Illinois has a common-law rule essentially identical to Rule 403 of the Federal Rules of Evidence, the court adopted *Old Chief*. The court noted that courts in other states had done the same. *Peete*, 318 Ill. App. 3d at 968 (citing cases). The court concluded that, "[b]ecause the evidence in this case was not overwhelming, the trial court's failure to accept defendant's stipulation was an abuse of discretion constituting reversible error." *Peete*, 318 Ill. App. 3d at 970. The Fourth District has upheld *Peete* in two subsequent cases. See *People v. Lindsey*, 324 Ill. App. 3d 193, 199-200 (2001); *People v. Davis*, 319 Ill. App. 3d 927, 930 (2001).

■ We choose to follow the Fourth District's lead and adopt *Old Chief*. Because the State needed to prove only that defendant had been convicted of a felony, defendant's proposed stipulation to that fact was no less probative than the evidence identifying the felony. Furthermore, the name of the felony carried an obvious risk of unfair prejudice. From the outset, the State's theory was that defendant had possessed the gun "to make sure that he got paid for the drugs he sold." That theory was immeasurably bolstered by the fact that defendant had been convicted of the unlawful possession of a controlled substance with the intent to deliver. The State clearly was aware of the power of that evidence, as it referred to the conviction in its ultimate words to the jury. Thus, in accordance with *Old Chief* and *Peete*, we conclude that the jury should have heard defendant's stipulation to his status as a felon but should not have heard the name of the felony. On these facts, defendant's trial was unfair.

The State points out that, in *People v. Clark*, 186 Ill. App. 3d 109 (1989), the First District reached a different result. There, the defendant was charged with the unlawful use of a weapon by a felon (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1). He moved *in limine* to exclude evidence of the nature of his prior conviction. The trial court denied the motion and admitted a certificate stating that the defendant had been convicted of armed robbery. The defendant was convicted, and he appealed. The appellate court ruled:

> "We will not hold that the trial court abused its discretion in allowing introduction of the nature of the prior conviction here. No Illinois case so holds, and the legislature has not precluded the

State from presenting such evidence. Moreover, we do not believe that a defendant is denied due process by introduction of the nature of the conviction where the conviction is an element of the offense, even where there is a stipulation to the undesignated felony." *Clark*, 186 Ill. App. 3d at 114.

We decline to follow *Clark*. As the State appears to concede, after *Old Chief*, the viability of *Clark* is questionable at best. Furthermore, though it remains true that the legislature has not precluded the admission of the nature of a prior conviction under these facts, it is also true that the legislature has not *permitted* the admission of such evidence. The legislature is empowered to enact rules of evidence (*People v. Rolfingsmeyer*, 101 Ill. 2d 137, 140 (1984)), but we cannot infer such an enactment when the legislature is silent (*In re Branning*, 285 Ill. App. 3d 405, 414 (1996)). Because the legislature has not rejected it in this context, we are free to apply our common-law rule that relevant evidence may be excluded when its prejudice substantially outweighs its value. Notably, the *Clark* court did not apply that rule, which further undermines its analysis.

Finally, the State argues that, unlike in *Peete*, no reversible error occurred because the evidence here was overwhelming. We disagree. The State's key witnesses were Aprylle and Crystal, both of whom had lied to the police and had agreed to testify in exchange for immunity. Furthermore, the jury convicted defendant only after asking the court numerous substantive questions and deliberating for a period nearly twice as long as the trial itself. Clearly, the evidence was not overwhelming, though it "suffices to permit retrial without offending double jeopardy." *Peete*, 318 Ill. App. 3d at 972. Thus, we reverse defendant's convictions and remand the cause. If defendant offers to stipulate that he has been convicted of a felony and objects to the naming of the felony, the trial court must accept the stipulation and exclude the name of the felony.

## III. PRIOR CONSISTENT STATEMENT

■ Although a new trial is required, we address an issue that is likely to recur. See *People v. Vasquez*, 307 Ill. App. 3d 670, 673 (1999). Defendant challenges the trial court's admission of Crystal's second written statement, a prior statement consistent with her testimony. A prior consistent statement is admissible only to rebut a charge or inference that (1) the witness is motivated to testify falsely, as long as she made the prior statement before the motive arose; or (2) the witness's testimony is of recent fabrication, as long as she made the prior statement before the alleged fabrication. *People v. Lambert*, 288 Ill. App. 3d 450, 453 (1997).

■ Here, defendant does not dispute that Crystal's second written

statement was admissible to rebut his suggestion that Crystal's immunity had motivated her to testify falsely. He argues, however, that the court erred in admitting the statement as substantive evidence. Illinois follows the common-law rule that a prior consistent statement may be admitted only to rehabilitate the witness; the statement may not be admitted as evidence that its content is true. *Lambert*, 288 Ill. App. 3d at 457.

■ The State responds that Crystal's second written statement was *not* admitted substantively. We disagree. The State moved to admit the statement as substantive evidence. Although the trial court admitted the statement without expressly permitting its substantive use, the State proceeded to argue to the jury that the statement "tells the truth." Such use of the statement was, by definition, substantive use. Later, on the jury's request, the court sent the statement to the jury room. Without an instruction as to the limited purpose for which the jury could use the statement, "the jury herein could quite easily have concluded that they could use [it] for any purposes they wished, including as substantive evidence of the matters stated therein." *People v. Carr*, 53 Ill. App. 3d 492, 499-500 (1977).

Defendant raises an additional problem as to the content of the statement. In the statement, Crystal wrote that defendant had given Bruce "three $50 *** rocks," but she did not include that information in her testimony. Again, without an instruction that the statement pertained only to Crystal's credibility, the jury was not prevented from improperly considering the extraneous fact. See *People v. Antczak*, 251 Ill. App. 3d 709, 719 (1993).

We acknowledge that defendant failed to preserve these points. Indeed, he did not object when the State told the jury that the statement "tells the truth" (*People v. Enoch*, 122 Ill. 2d 176, 186 (1988)) and did not submit a limiting instruction (*People v. Edwards*, 144 Ill. 2d 108, 168-69 (1991)). Thus, our discussion here is intended only to assist the trial court on remand.

## IV. DEFINITION OF POSSESSION

Finally, defendant challenges the trial court's answer to the jury's question on the definition of possession. He asserts that, because the State's theory was that defendant alone had actually possessed the gun, the court improperly injected new issues into the case by instructing the jury on constructive and joint possession.

As a different jury will serve at retrial, we deem this issue unlikely to recur. Thus, we decline to address it. See *People v. Brown*, 232 Ill. App. 3d 885, 900 (1992).

## V. CONCLUSION

For these reasons, the judgment of the circuit court of Du Page

County is reversed, and the cause is remanded for a new trial consistent with this opinion.

Reversed and remanded.

BYRNE, J., concurs.

JUSTICE O'MALLEY, specially concurring in part and dissenting in part:

I dissent only from the majority's holding that the trial court erred in allowing the State to prove the nature of defendant's prior felony.

The majority devotes as much attention to *Old Chief* as it does to Illinois law. The issue is one of state law, and state law ought to drive the analysis of it. Several points of Illinois law have direct bearing on the issue. The first is that, in a criminal prosecution, the State is allowed to prove every element of the crime charged and every relevant fact, the defendant's stipulations notwithstanding. *People v. Hobley*, 159 Ill. 2d 272, 316 (1994). "[T]he State is not obligated to anticipate the avenue of defense and limit its proofs accordingly, even though defendant admits or stipulates to the existence of certain facts." *People v. Stephens*, 18 Ill. App. 3d 971, 978 (1974). As put in *People v. Speck*, 41 Ill. 2d 177 (1968):

" 'It has never been held that the State is barred from proving a fact because the defendant offers to admit it, but, on the contrary, the rule is that when a trial is upon a plea of not guilty the State is permitted to go ahead and introduce its full proof of the crime charged in the indictment.' " *Speck*, 41 Ill. 2d at 201-02, quoting *People v. Scheck*, 356 Ill. 56, 62 (1934).

Illinois courts have assiduously enforced this principle. See, *e.g.*, *People v. Rachel*, 123 Ill. App. 3d 600, 605 (1984) (defense stipulation to defendant's identity and presence in home where assault took place did not preclude State's proof on those points); *People v. Kelly*, 24 Ill. App. 3d 1018, 1029 (1975) (defense stipulation that bullet fired from his gun killed the victim did not preclude State from illustrating bullet's point of entry into victim's head). Today, the majority fails to acknowledge this principle.

My second point concerns the majority's assertion that the legislature's silence in the wake of *Clark* is no basis for inferring the legislature's stance toward *Clark*. I disagree based on the following rule:

" '[A] reenacted statute will be given the same construction as that given the prior act, since the legislature is presumed to know the

construction which has been given to the statute and, by reenactment, is assumed to have intended for the new statute to have the same effect. [Citation.] Thus, an amendatory act is not only to be construed as continuing in effect the unchanged portions thereof [citation] but, more significantly, if previously construed terms in the unamended sections are used in the amendment, it is generally concluded that the legislature intended to adopt the prior construction given to these terms. [Citation.]' " *People v. Agnew*, 105 Ill. 2d 275, 280 (1985), quoting *Hupp v. Gray*, 73 Ill. 2d 78, 85-86 (1978).

Twice since *Clark* the legislature has reenacted section 24—1.1(a) of the Criminal Code of 1961 (720 ILCS 5/24—1.1(a) (West 2000)), which states the elements of unlawful possession of a weapon by a felon. See Pub. Act 91—544, eff. January 1, 2000; Pub. Act 88—300, eff. January 1, 1994. The relevant language has remained unchanged since the *Clark* decision, indicating the legislature's approval of *Clark*. *Peete*, the 2001 Fourth District case followed by the majority, was decided after the amendments. To my knowledge, section 24—1.1(a) has not been amended since *Peete*. Today's decision, I conclude, frustrates the implied intent of the legislature.

Furthermore, I believe that the majority abrogates an act of the legislature concerning proof of prior convictions. Illinois courts have long held that a prior conviction can be proved only by the record or an authenticated copy showing the caption, the return of the indictment in open court by the grand jury, the indictment and arraignment of the defendant, the impaneling of the jury and its verdict or the waiver of the jury, and the final judgment of the court. See, *e.g.*, *People v. Dudley*, 217 Ill. App. 3d 230, 233 (1991); *People v. Lindsey*, 148 Ill. App. 3d 751, 760 (1986). The nature of the felony necessarily is revealed during this proof process, which derives from a decision of our supreme court. See *People v. Lane*, 400 Ill. 170, 173 (1948). There is no Illinois statute specifically addressing proof of prior convictions. M. Graham, Cleary & Graham's Handbook of Illinois Evidence, § 609.6, at 476 (7th ed. 1999). In the absence of such a statute, the place where the legislature most likely would speak on the subject, at least as it respects proof of a predicate felony for a charge of unlawful possession of a weapon by a felon, is section 24—1.1(a). But the legislature has never amended section 24—1.1(a) to abrogate the rule in *Lane*. The supreme court's interpretation of a statute is considered part of the statute itself unless and until the legislature amends the statute contrary to the interpretation. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 387 (1998). Through the legislature's acquiescence, *Lane*'s specific requirements for proving a felony conviction have become part of the elements of unlawful possession of a

weapon by a felon. Accordingly, in a trial on that charge, proof of the nature of the predicate felony is not surplusage but an element of the crime. Such statutorily mandated proof cannot be suppressed by judicial fiat based not on constitutional principles but on a probative/prejudicial analysis with roots in state law.

Defendant indeed was prejudiced by the revelation that he had a prior conviction of unlawful possession of a controlled substance with the intent to deliver. I defer to *Scheck*'s answer to a like objection:

> " 'It is said that the only effect of the evidence was to create prejudice against the defendant, and it is undeniable that proof of criminal acts tends to create a feeling of prejudice against the guilty person, but that results in every criminal prosecution and furnishes no good ground for excluding evidence of such acts.' "
> *Scheck*, 356 Ill. at 60, quoting *People v. Munday*, 293 Ill. 191, 206 (1920).