THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD PARKER, Defendant-Appellant.

First District (1st Division)   Nos. 1—00—3074, 1—01—0824 cons.

Opinion filed November 18, 2002.

Michael J. Pelletier and Barbara C. Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COHEN delivered the opinion of the court:

Defendant Ronald Parker was charged by information with two counts of unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24—1.1(a) (West 1998)). After extensive admonishment from the trial court, Parker waived his right to representation by counsel and elected to proceed *pro se*. Following a jury trial, Parker was convicted on a single count of UUWF and sentenced to two years' imprisonment.

Through appointed counsel, Parker appealed his conviction. While Parker's direct appeal (No. 1—00—3074) was pending, Parker filed a *pro se* petition for postconviction relief (725 ILCS 5/122—1 *et seq.* (West 1998)). The trial court dismissed Parker's postconviction petition as frivolous and patently without merit (725 ILCS 5/122—2.1(a)(2) (West 1998)). Parker then appealed the dismissal of his postconviction petition (No. 1—01—0824), also through appointed counsel. We consolidated Parker's appeals for purposes of disposition.

On appeal, Parker argues that the trial court erred in failing to appoint standby counsel prior to trial. Parker further argues that the trial court erred in allowing the State to establish the nature of his prior felony conviction (second degree murder) where the UUWF statute required the State to prove only that Parker had been "convicted of a felony." 720 ILCS 5/24—1.1(a) (West 1998). For the reasons that follow, we affirm.

## BACKGROUND

Ronald Parker was arrested on suspicion of burglary after police detained and searched a truck Parker was driving. In the truck, police found three washing machines and a clothes dryer that they suspected had been stolen from a Chicago Housing Authority (CHA) development. A subsequent search revealed a loaded .380-caliber pistol hidden between the driver and front passenger seats.

### I. Pretrial

Parker was charged by information with two counts of UUWF. One count was predicated on possession of a firearm and the other on possession of ammunition. On January 27, 2000, Parker was arraigned on both charges, elected to proceed *pro se* and pled not guilty. Parker

filed a *pro se* motion for dismissal and requested an evidentiary hearing, arguing that he was exempt from prosecution because: (1) "the presumption that a weapon found in a car is in possession of the occupants of the car does not apply to the driver of a vehicle operated for hire"; and (2) Parker had been hired to move the washing machines and dryer police found in his truck. At a February 9, 2000, status call, Judge Joseph Kazmierski acknowledged that he had previously granted Parker leave to proceed *pro se*. Also present were Assistant State's Attorneys (ASAs) Aleksandra Nikolich and Stephen Fine. Judge Kazmierski then addressed Parker's motion to dismiss and informed Parker that whether he was exempt from prosecution was a factual matter to be resolved at trial and not an appropriate basis for dismissal. Judge Kazmierski then denied Parker's motion for reduction of bond and set the case for trial.

The case was then transferred to Judge Rickey Jones for trial. Prior to jury selection, Judge Jones admonished Parker with respect to Parker's decision to proceed *pro se*:

"THE COURT: Let me explain to you, you're entitled to have a lawyer represent you. Do you understand that?

[PARKER]: Yes, sir.

THE COURT: If you're unable to afford a lawyer a lawyer will be appointed to represent you. Do you understand that?

[PARKER]: Yes, sir.

THE COURT: Do you desire a lawyer to represent you[, Mr. Parker]?

[PARKER]: No, sir.

THE COURT: Let me explain some other things to you, Mr. Parker. This offense you're charged with, unlawful use of a weapon by a felon[,] is a Class 3 felony. If you're found guilty of that offense you could be sentenced to *** between two and five years plus one year mandatory supervised release. Do you understand that?

[PARKER]: Yes, sir.

THE COURT: Also, Mr. Parker, you could be sentenced to an extended term *** between five and ten years if it is established that you have been convicted of a similar or greater felony within the last ten years. Do you understand that?

[PARKER]: Yes, sir.

THE COURT: Now, Mr. Parker, if you decide to represent yourself I will hold you to the same standards that I would hold any other attorney that would appear in this courtroom. Do you understand that?

[PARKER]: Yes, sir.

THE COURT: That means you would be going against these two

[S]tate's [A]ttorneys over here, who are lawyers. They've graduated from law school, been practicing law for a number of years. They're skilled trial attorneys and I would expect that you would conform to the same standard as any other attorney would. Do you understand that?

[PARKER]: Yes, sir.

THE COURT: All right. Knowing and understanding the nature of the charge and your right to an attorney and the possible sentence in this case do you still desire to represent yourself?

[PARKER]: Yes, I do, your Honor.

THE COURT: Have you given that considerable thought?

[PARKER]: Yes, sir.

THE COURT: You understand that there are attorneys in the Public Defender's office who could be appointed to represent you if you so desire. Do you understand that?

\* \* \*

[PARKER]: Yes sir, your Honor. My reason for it, it's been made pretty clear to me that my best interests wouldn't be served by the Public Defender's office.

THE COURT: I don't know what you mean. If someone has tried to induce you in any way not to obtain representation from the Public Defender's office—

[PARKER]: No, sir, your Honor. It was just a matter which they wanted to proceed with the issues of the charges.

THE COURT: Have you had an opportunity to speak to an attorney from the Public Defender's office?

[PARKER]: Yes, sir.

THE COURT: How many did you speak to?

[PARKER]: I spoke to one that was in the courtroom but I had an opportunity to see several of them that work that courtroom and I was just concluding that they just couldn't serve my best interest.

THE COURT: After speaking to just one attorney and seeing several others in the courtroom. Let me explain to you first that there are other attorneys in the Public Defender's officer [sic] who may be, if you're not satisfied with the one you spoke to, another could be appointed to possibly talk to you about representing you.

[PARKER]: With no disrespect to the Court or the Public Defender's office, your Honor, I just found from experience even with my previous felony conviction, my experience with the Public Defender's office just hasn't been a good one.

THE COURT: So you have decided of your own free will that you do not want an attorney from the [P]ublic [D]efender's office to represent you. Is that correct?

[PARKER]: Yes, sir."

The State then moved to amend the information against Parker to add the words "second degree" before the word "murder" in order to correctly reflect the nature of Parker's prior felony conviction. As amended, the information charged that Parker "knowingly possessed on or about his person, a firearm: to wit, a handgun, after having been previously convicted of the felony offense of second degree murder under case number 89—CR—7261." Parker allowed the State's proposed amendment without objection.

Parker next inquired whether and, if so, how the State would be allowed to introduce evidence of his prior felony conviction. Judge Jones informed Parker that the State would be allowed to inform the jury that Parker had a prior felony conviction but would be barred from disclosing the nature of Parker's conviction. ASA Nikolich informed Judge Jones that the State had intended to introduce into evidence a certified copy of Parker's conviction, and asked whether the certified copy should be redacted or whether Parker was willing to stipulate to the fact of his prior conviction. Parker offered to stipulate, at which point Judge Jones noted that "the fact that it was a second degree murder offense is part of the information already. The jurors will already be notified of the fact that it was a second degree murder conviction." Judge Jones then informed Parker:

"THE COURT: When I read the jury the information, which contains the nature of the [prior] felony offense, the nature of the felony offense will be given to the jury. They will be notified of the nature and they'll be told that it's second degree murder. So part of the stipulation—do you have any objection to the stipulation that if you were convicted of the felony—

[PARKER]: Yes, sir, I do object to that.

\* \* \*

[PARKER]: [T]he charge is UUW by felon and felony conviction but the nature of the conviction shouldn't have to be given to the jury.

THE COURT: What does the [S]tate have to say about that?

\* \* \*

MISS NIKOLICH: Judge, it is an element of the offense.

THE COURT: I think what the defendant is saying [is that] he's willing to stipulate that it's a felony. I don't think that the statute says that the proof of the nature of the offense, it's one of the elements. Just the mere fact that he was convicted of a felony.

MISS NIKOLICH: That's fine. We would enter into that stipulation if you want to read it to the jury, just read after having been previously convicted of a felony offense under case number 87 CR 7261."

Judge Jones then asked whether the State would be moving to amend the information, to which ASA Nikolich replied that the State would not object if the court chose to redact the information on the court's own motion. Judge Jones replied:

"THE COURT: Well, it won't be on the Court's motion, it will be on you. You maintain your position that you feel that [the nature of Parker's prior conviction] should be read to the jury as part of the information. That's your position?

MISS NIKOLICH: Judge, I think the fact that he has been convicted of second degree murder is more probative.

THE COURT: That's certainly a valid and legitimate issue.

[PARKER]: I would disagree, your Honor. The only charge is possession by a felon the nature of the felon[y] shouldn't be a part. It is pretty prejudicial."

Following a five-minute recess, ASA Nikolich informed the court that the State was willing to concede to Parker's objection and offered to stipulate that "defendant ha[d] previously been convicted of a felony offense under case number 89 CR 7261 in the State of Illinois," to which Parker agreed.

At that point, Parker again attempted to discuss his claimed "exemption" from prosecution; however, the State informed Parker that no such exemption existed:

"[PARKER]: [M]y defense will be exemption from the charge.

THE COURT: Based on?

[PARKER]: Based on the UUW—

* * *

MR. FINE: Judge, if that is his defense he would attempt to introduce during the course of trial we would make a motion for side bar so he not misstate the law to the jury. He's a felon, he is not to have a weapon at any time.

THE COURT: He is saying there are certain exemptions.

MS. NIKOLICH: Not if he is a felon.

THE COURT: Want to address that in the motion in limine, Mr. Parker?

[PARKER]: It wouldn't be necessary."

The next day, following jury selection, Judge Jones met with counsel, including Parker and ASAs Nikolich and Fine, outside the presence of the jury to address additional pretrial matters. At that time, Judge Jones reaffirmed Parker's decision to proceed *pro se*. Judge Jones then further discussed with Parker Parker's claimed "exemption" from prosecution:

"[PARKER]: As the law explains, I am exempt from being charged.

THE COURT: All right. On what basis? Yes, State.

MISS NIKOLICH: I think what he is referring to is for a regular class—what used to be a Class 4 UUW. If you had a gun in your own fixed place of business, it was okay, but he has a UUW by felon. You cannot have a gun anywhere. I think that's what—

\* \* \*

THE COURT: You're saying that you had a job that entitled you to possess [the gun] or something?

[PARKER]: No, sir. What I'm saying I was performing a job in the commission of being charged with UUW which I am exempt due to the fact that I was the foreman of this job."

Judge Jones then directed Parker to show ASA Nikolich a copy of the statute containing his claimed exemption. ASA Nikolich responded:

"MISS NIKOLICH: He is showing me the UUW—the straight UUW statute.

THE COURT: Not the one that—

MISS NIKOLICH: Not the one by felon.

MR. FINE: *He is referring to [720 ILCS] 5/24—1. He has been charged under Section 5/24—1.1.*

MISS NIKOLICH: *This does not apply to this one.*" (Emphasis added.)

ASA Fine then informed the court that after reviewing the case law, the State was withdrawing its agreement to stipulate to Parker's prior felony conviction. Parker was allowed time to read the cases upon which the State relied in reversing its position, after which Judge Jones ruled:

"THE COURT: All these cases are related to the very issue that the State has raised; that the nature of the charge is an element of the offense, not the mere fact that the defendant has a felony conviction, and that the jury should be apprised in the—when they are informed of the charge, of the nature of the felony offense, that the defendant has been previously convicted of and also that at trial that evidence is admissible on that issue, not only the mere fact of a felony conviction but the nature of the felony conviction.

These cases do support that and I have considered those cases, and after reconsidering the matter, I have determined that the jury would be informed of the nature of the conviction; that the conviction was second-degree murder, and also that information would be—can be admitted during the course of the trial.

However, the Court will provide a limiting instruction to the jury as to the proper consideration of that evidence.

\* \* \*

That means that [the jury is] to consider only on the element of

proof that you did have a previous conviction of second-degree murder at the time of the alleged offense. They are not to consider it for any other purpose. That means that they can't consider that evidence as to your propensity to commit crime."

Parker then requested that the record reflect Parker's standing objection to the introduction of evidence of the nature of his prior felony conviction, which Judge Jones allowed. Judge Jones then informed the parties that his limiting instruction would read: "You are to consider evidence of the prior conviction for second-degree murder only for the limited purpose of proof that the defendant was previously convicted of a felony at the time of the alleged offense." The parties accepted this instruction without objection.

The court having disposed of all pretrial matters, the jury was brought in and sworn and the case proceeded to trial.

## II. Trial

Evidence introduced at trial established that around 6:20 a.m. on December 12, 1999, Chicago police officers Edward Pakula and Terrance Collins monitored a call reporting a burglary in progress at a Chicago Housing Authority (CHA) building located at 4947 South Federal Avenue. The call indicated that three men were removing clothes washers and a dryer from the premises and loading them into a blue van. As the officers responded to the call, they noticed a large, light blue moving truck in a parking lot at 4950 South State Street, which runs parallel to Federal Avenue. The officers entered the lobby of the CHA building and spoke to witnesses Tera Stevenson and Constance Miller, who informed the officers that three men loaded washers into the back of a light blue truck that had just driven away. The glass windows in the lobby of the CHA building allowed the officers to observe the light blue moving truck proceeding north on State Street. Officer Pakula then sent a flash radio message requesting that the moving truck be stopped.

Officers John Adams and Brian Josephs were in the area and responded to Officer Pakula's flash message. Officers Adams and Josephs and four other responding police units stopped the truck two blocks away at 4733 South State Street. Officer Adams approached the truck and observed Parker and two other men sitting in the cab. Officer Adams then ordered all three men to exit the cab and stand at the rear of the truck against the tailgate.

Officers Pakula and Collins took Stevenson and Miller in their patrol car to the site of the stopped truck. Stevenson and Miller positively identified Parker and the two other men standing at the rear of the truck as the individuals they had observed earlier taking the washing machines. Officers Pakula and Collins then arrested all three men and transported them to the Second District police station.

One of the remaining officers on the scene opened the truck's tailgate and found three washing machines and one dryer. The officers then impounded the truck. Officer Adams subsequently searched the cab of the truck and discovered a silver .380-caliber semi-automatic pistol hidden between the driver and front passenger seats inside a blue Crown Royal liquor bag. Officer Josephs cleared (unloaded) the pistol, which had three live rounds of ammunition in the magazine and a fourth live round in the firing chamber.

At the Second District station, the three men were taken to an interview room. Officer Pakula advised Parker of his *Miranda* rights, which Parker acknowledged that he understood. Officer Adams subsequently entered the interview room while holding the pistol he had recovered from the truck, and said to Officer Pakula, "Look what I found." Officers Pakula and Adams both testified that upon seeing the pistol, Parker stated "[T]hat's mine. I use it for protection." The officers testified that Parker further admitted to owning the truck from which Officer Adams had recovered the pistol, but denied knowledge of any burglary.

The State also entered into evidence certified copies of title records indicating that Parker owned the truck from which the pistol was recovered.

In his defense, Parker called Officers Collins, Pakula and Adams, as well as civilian Sherita Turner. Turner testified that she had previously hired Parker to move property for her. Parker then informed the court that he intended to testify in his own defense. Judge Riley explained to Parker that if Parker decided to testify, the jury would be allowed to consider his prior conviction for purposes of evaluating his credibility and that the court's previous limiting instruction would be rescinded. Parker then changed his mind and elected not to testify.

Following the close of evidence, the State nol-prossed the UUWF count predicated on Parker's possession of ammunition. The parties then presented their closing arguments and the jury retired to deliberate. The jury subsequently found Parker guilty of the remaining UUWF charge.

Assistant public defender Tom Price was appointed as standby counsel to assist Parker with posttrial motions and sentencing. At a hearing on Parker's posttrial motions, Price argued that Judge Kazmierski erred in failing to hold an evidentiary hearing on Parker's pretrial motion to dismiss and that, had a hearing been granted, Parker would have learned earlier that no exemption from prosecution was possible under the UUWF statute. Price reasoned that the absence of standby counsel earlier in the proceedings "colored" Parker's decision to proceed to trial. In response, ASA Nikolich noted—and Judge

Riley agreed—that both the State and the court had attempted to explain to Parker the difference between UUW and UUWF several times on the record. The trial court denied Parker's posttrial motions and sentenced Parker to two years' imprisonment.

Parker appealed his conviction. While Parker's direct appeal (No. 1—00—3074) was pending, Parker filed a *pro se* petition for relief pursuant to the Post-Conviction Hearing Act. 725 ILCS 5/122—1 *et seq*. (West 1998). The trial court dismissed Parker's postconviction petition as frivolous and patently without merit. 725 ILCS 5/122—2.1(a)(2) (West 1998). Parker then appealed the dismissal of his post-conviction petition (No. 1—01—0824).[1] We consolidated Parker's appeals for purposes of disposition.

## ANALYSIS

### I. Direct Appeal (No. 1—00—3074)

#### A. Standby Counsel

■ We first consider Parker's argument that the trial court erred in failing to appoint standby counsel to assist Parker in his *pro se* representation prior to trial. The principles underlying the appointment of standby counsel in Illinois are clear:

> "The right of self-representation does not carry with it a corresponding right to legal assistance; one choosing to represent himself must be prepared to do just that. [Citation.] Standby counsel may assist a *pro se* defendant 'in overcoming routine procedural or evidentiary obstacles to the completion of some specific tasks, such as introducing evidence or objecting to testimony, that the defendant has clearly shown he wishes to complete' and may also help 'ensure the defendant's compliance with basic rules of courtroom protocol and procedure.' [Citation.] The trial court has broad discretion to appoint counsel for these advisory or other limited purposes and to determine the extent and nature of standby counsel's involvement. [Citation.]" *People v. Simpson*, 204 Ill. 2d 536, 562-63 (2001), *cert. denied*, 535 U.S. 991, 152 L. Ed. 2d 472, 122 S. Ct. 1547 (2002).

---

[1]The office of the Cook County public defender was originally appointed to represent Parker in Parker's appeal from the dismissal of his postconviction petition (No. 1—01—0824). Parker discharged his attorney, at which time the office of the State Appellate Defender was substituted as counsel. After reviewing Parker's file, counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), asserting that no issues of arguable merit existed for purposes of appeal. Parker filed no response. We took counsel's motion with the case and address it later in this opinion.

■ Parker's claim of "exemption" from prosecution was predicated on section 24—1(d) of the UUW statute, which provides:

> "The presence in an automobile *** of any weapon *** is prima facie evidence that it is in the possession of, and is being carried by, all persons occupying such automobile at the time such weapon *** is found, except under the following circumstances: *** (ii) if such weapon *** is found in an automobile operated for hire by a duly licensed driver in the due, lawful and proper pursuit of his trade, then such presumption shall not apply to the driver." 720 ILCS 5/24—1(d) (West 1998).

Parker argued below that because he had been hired as a mover and was acting in the lawful pursuit of his business, the presumption that he was in possession of the weapon found in his truck did not apply by operation of law, and therefore, he could not be found guilty of the offense of UUW. Parker reasoned that UUW was an "element" of UUWF, and that if he could not be found guilty of UUW, then he could not be found guilty of UUWF.

■ For a *pro se* defendant, Parker's argument was relatively sophisticated, if ultimately misguided: unlawful use of a weapon (UUW) is not an "element" of unlawful use of a weapon *by a felon* (UUWF), but an entirely distinct offense. "The elements of [UUWF] are: (1) the knowing possession or use of a firearm and (2) a prior felony conviction." *People v. Gonzalez,* 151 Ill. 2d 79, 87 (1992); 720 ILCS 5/24—1.1(a) (West 1998). The exception to the presumption of possession stated in section 24—1(d) (UUW) is inapplicable to cases involving prosecution for UUWF under section 24—1.1. Compare 720 ILCS 5/24—1(d) (West 1998) with 720 ILCS 5/24—1.1(a) (West 1998). Analysis reveals Parker's theory of "exemption" as untenable.

The gist of Parker's argument on appeal is that had standby counsel been appointed prior to trial, Parker might have learned sooner that his defense of "exemption" from prosecution for UUWF had no basis in the law. Thus, Parker argues, he may have elected not to proceed to trial. Essentially, Parker asks this court to "extend the duties of standby counsel to encompass preparation of a legal defense." *Simpson,* 204 Ill. 2d at 562. We decline to do so.

■ The purpose of standby counsel is to assist a *pro se* defendant in completing routine courtroom tasks and in complying with the procedural rules of the court. *Simpson,* 204 Ill. 2d at 563. "In deciding whether to appoint standby counsel, the court should consider the following criteria: '(1) the nature and gravity of the charge; (2) the expected factual and legal complexity of the proceedings; and (3) the abilities and experience of the defendant.' " *People v. Mazar,* 333 Ill.

App. 3d 244, 249, 775 N.E.2d 135, 140 (2002), quoting *People v. Williams*, 277 Ill. App. 3d 1053, 1058 (1996).

■ UUWF is a moderately serious (Class 3) felony charge. The proceedings below, however, were neither especially fact-intensive nor complex. The State was required to prove only that Parker knowingly possessed a firearm and the existence of Parker's prior felony conviction. *Gonzalez*, 151 Ill. 2d at 87. Parker was familiar with the criminal justice system as a result of his prior felony proceedings. The record reflects that Parker showed little difficulty in being able to present his arguments to the trial court and comply with the major rules of procedure. Significantly, Parker never requested the appointment of standby counsel prior to or during trial.

The record further reflects that the assistant State's Attorneys unambiguously informed Parker that no "exemption" from prosecution existed under the UUWF statute and even provided Parker with specific statutory citations. Parker elected to proceed *pro se* after thorough admonishment by the trial court—accepting all the hazards that decision entails—and now must bear the consequences. Those consequences include Parker's failure to correctly understand the law. The fact that Parker misapplied the law in formulating his theory of defense does not compel the conclusion that the trial court abused its broad discretion in declining to appoint standby counsel, and we will not so hold. *Williams*, 277 Ill. App. 3d at 1058; *People v. Redd*, 173 Ill. 2d 1, 38 (1996).

## B. Evidence of Prior Conviction

■ Parker further argues that the trial court erred in allowing the State to establish the nature of his prior felony conviction (second degree murder) where the UUWF statute required the State to prove only that Parker had been "convicted of a felony." 720 ILCS 5/24-1.1(a) (West 1998). Parker urges this court to follow the lead of the Second and Fourth Districts (*People v. Walker*, 335 Ill. App. 3d 102 (2002); *People v. Peete*, 318 Ill. App. 3d 961 (2001)), and adopt the rule announced in *Old Chief v. United States*, 519 U.S. 172, 191-92, 136 L. Ed. 2d 574, 595, 117 S. Ct. 644, 655 (1997), making it a *per se* abuse of discretion for courts to allow the admission of the nature of a UUWF defendant's prior felony conviction where the defendant offers to stipulate to the fact of the conviction.

Under the facts of this case, it is unnecessary for us to decide whether to adopt the rule in *Old Chief*. Both *Peete* and *Walker* make clear that their respective analyses turn on the fact that the evidence against the defendants in those cases was not overwhelming. See

*Peete*, 318 Ill. App. 3d at 965, 970 (characterizing the testimony of record as "sketchy and confusing" and holding that "[b]ecause the evidence *** was not overwhelming, the trial court's failure to accept defendant's stipulation was an abuse of discretion constituting reversible error"); *Walker*, 335 Ill. App. 3d at 113 (finding that the State's key witnesses had lied to police and had agreed to testify in exchange for immunity, and that the jury returned a guilty verdict only after directing "numerous substantive questions" to the trial court and engaging in lengthy deliberation, then concluding that "[c]learly, the evidence was not overwhelming").

By contrast, the record before us contains overwhelming evidence of Parker's guilt. Parker was arrested driving the truck from which Officer Adams recovered the pistol. Officers Pakula and Adams both testified that Parker admitted to owning the truck. The State also entered into evidence certified copies of title records indicating that Parker owned the truck. The officers further testified that upon seeing the pistol that Officer Adams recovered from the truck, Parker admitted, "[T]hat's mine. I use it for protection."

The record reflects that Parker presented no evidence to counter the officers' testimony, instead pursuing his theory of "exemption" from prosecution at trial.[2] Parker questioned Officer Pakula with respect to the ownership of the truck in an attempt to clarify Parker's status as a hired mover. Parker also called Sherita Turner to testify that she had previously hired him to move property in a CHA building and that he had been hired to move property on the day he was arrested.

The offense of UUWF demands two distinct elements of proof: "(1) the knowing possession or use of a firearm and (2) a prior felony conviction." *People v. Gonzalez*, 151 Ill. 2d 79, 87 (1992); 720 ILCS 5/24—1.1(a) (West 1998). The risk that *Old Chief* attempts to ameliorate is that of unfairly prejudicing a defendant via the introduction of evidence of a prior bad act as part of the State's proof of the prior-felony-conviction element of UUWF. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground

---

[2]The record reflects that at one point, Parker deviated from his "exemption" theory when he attempted to call an undisclosed witness. When the State objected, the trial court allowed Parker to make an offer of proof. Parker informed the court that he intended to call the witness to testify that a codefendant present in the truck possessed the pistol; however, because Parker admitted to the court that the witness was not present at the time of Parker's arrest and thus had no knowledge of who possessed the pistol at that time, the trial court barred Parker from calling the witness to testify.

different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180, 136 L. Ed. 2d at 587-88, 117 S. Ct. at 650. " ' "[U]nfair prejudice" \*\*\* is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair." ' " *Old Chief*, 519 U.S. at 193, 136 L. Ed. 2d at 596, 117 S. Ct. at 656 (O'Connor, J., dissenting, joined by the Chief Justice, Scalia, J., and Thomas, J.), quoting *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 ) (5th Cir. 1977), *cert. denied* 435 U.S. 996, 56 L. Ed. 2d 85, 98 S. Ct. 1648 (1978).

We hold that where, as here, the State's proof as to the element of knowing possession of a firearm is overwhelming, and where the trial court provides an instruction limiting the jury's use of evidence of the nature of defendant's prior felony conviction to proof of felon status only, the attendant risk that the introduction of that evidence would "lure the [jury] into declaring guilt on a ground different from proof specific to [UUWF]" (*Old Chief*, 519 U.S. at 180, 136 L. Ed. 2d at 588, 117 S. Ct. at 650) is so low as to be negligible, the nature of defendant's prior felony notwithstanding. Unlike *Peete* and *Walker*, fact situations involving overwhelming evidence of a defendant's guilt do not implicate the concerns raised in *Old Chief*. *Old Chief* is of no help to Parker here.

## II. Postconviction/*Finley* (1—01—0824)

■ After reviewing the record in case No. 1—01—0824, counsel moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), asserting that no issues of arguable merit existed for purposes of appeal. We took counsel's motion with the case.

The trial court dismissed Parker's *pro se* postconviction petition as frivolous and patently without merit. 725 ILCS 5/122—2.1(a)(2) (West 1998). "A post-conviction petition is considered frivolous or patently without merit only if the allegations in the petition, taken as true and liberally construed, fail to present the 'gist of a constitutional claim.' " *People v. Edwards*, 197 Ill. 2d 239, 244 (2001), quoting *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). Parker's *pro se* petition for postconviction relief asserts a due process violation predicated on the trial court's failure to recognize Parker's theory of "exemption" from prosecution; however, as we have previously found Parker's theory devoid of legal merit, we hold that the trial court correctly concluded that Parker failed to allege the gist of a constitutional claim. *Edwards*, 197 Ill. 2d at 244. Because Parker's *pro se* postconviction petition presents no issues of arguable merit for purposes of appeal, counsel's motion to withdraw pursuant to *Finley* is granted.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court in cases Nos. 1—00—3074 and 1—01—0824 is affirmed. Counsel's motion to withdraw in case No. 1—01—0824 is granted.

Affirmed; motion granted.

McNULTY and COUSINS, JJ., concur.