THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODNEY HARRIS, Defendant-Appellant.

Fourth District   No. 4—02—0481

Argued August 28, 2003.—Opinion filed October 29, 2003.

Michael J. Pelletier and Miriam Sierig (argued), both of State Appellate Defender's Office, of Chicago, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

In January 2002, a jury convicted defendant, Rodney Harris, of unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 2000)). In May 2002, the trial court sentenced defendant to a five-year prison term. On appeal, defendant argues (1) section 24—1.1 of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/24—1.1 (West 2000)) violates due process because it potentially punishes innocent conduct without requiring a culpable mental state, (2) the trial court erroneously refused his stipulation of a prior felony, and (3) the trial court improperly excused the transcribing of *voir dire* by a court reporter. We reverse and remand.

## I. BACKGROUND

At trial, the State offered defendant's four prior felony convictions, aggravated battery, intimidation, and two counts of unlawful delivery of controlled substance, into evidence to prove defendant's status as a felon. Defendant offered to stipulate to the convictions and asked that the specific felonies not be published to the jury. The State objected to the stipulation, and the trial court agreed with the State:

"THE COURT: I agree with you. But the Supreme Court doesn't. Aren't we supposed to identify the crimes? We're no longer to allow the jury to speculate because of what you just said. They might think it's murder. Or do you think a different rule applies in a prove up of an underlying felony?

\* \* \*

I'm going to name the offense. *** Although, I would agree there is some reason logically to think that it's different when you're just proving up a prior felony than when you're impeaching."

To establish defendant knowingly possessed an operable firearm, the State offered the testimony of officers and crime-lab technicians. Testimony relevant to this appeal follows.

Oliver Love, a Bloomington police officer, testified he was the officer who made the initial contact with defendant on April 2, 2001. At approximately 4:20 p.m., Love was driving on Market Street, near Mason Street, when he saw defendant in a group of six to eight men near the corner of Mason and Market Streets. Love knew there was a warrant for defendant; he did not recognize the others. After confirming the warrant was still valid, Love requested backup, exited his squad car, and approached defendant.

Love testified defendant was wearing blue sweatpants and sweatshirt, with a black baseball cap, and was holding a pit bull by a leash. Love told defendant to give the leash to someone and to come to him. Instead, defendant walked away from Love approximately 10 feet north on Mason Street.

Love testified one of the men took the pit bull from defendant. In that time, Love's backup, including Officer Chad Reeser, arrived. After Love gave the backup officers a description of defendant, defendant began sprinting south through the intersection of Mason and Market Streets. Love yelled for defendant to stop. Love and Reeser then chased defendant.

Love testified that as defendant ran through the intersection, he saw a handgun fall from defendant's waistband, at the small of defendant's back, and bounce in the intersection of Market and Mason Streets. Love retrieved the handgun as he ran. At Monroe Street, the next street they crossed, Love lost sight of defendant. Love called the canine unit and set a perimeter to watch for defendant. The officers found defendant in a large pine tree in the 600 block of West Jefferson. At the tree, Love saw what he believed might be a weapon in defendant's hand. Love told defendant to drop what was in his hand, which was a cellular phone. After defendant did not release the object, Officer Richard Hirsch, the canine officer, released his dog, which retrieved defendant from the tree by biting defendant's shoulder and pulling him from the tree.

Love testified defendant used vulgarities toward the police officers. Defendant repeatedly was "very much negative towards the dog" and "continuously bringing the theme that we would not have caught him without the dog." Love found cannabis on defendant.

Love testified he wrote in his report the handgun fell on Mason

Street approximately 30 feet south of Market, not in the intersection. Love believed the waistband on defendant's sweatsuit was elastic. The handgun was approximately 6 inches long, 4¹/₂ inches wide and weighed 2 to 3 pounds. Love denied defendant ran through two buildings on Market Street and not through the intersection.

Love further testified that after he lost sight of defendant, defendant could not have run north toward Econowash and then through the buildings to the location where he was found.

Defendant presented the testimony of four witnesses, who testified defendant did not run through the intersection where Love testified the handgun was found. Yeakia Thompson testified she was cleaning her tires at Econowash on Market Street when she noticed "the commotion." She watched defendant run through two buildings, a small business and a house, next to Econowash on Market Street. She was "positive" defendant did not run down Mason Street, and she did not see defendant drop anything. Thompson admitted she knew defendant, but only by name, because she had seen him at parties.

Toby Carlos III, who had known defendant for 15 to 20 years, testified he was with defendant, defendant's brother Azielis Phillip Harris (Phil), and Marcus Johnson on April 2, 2001. For approximately one to two hours in the afternoon, they lifted weights in defendant's mother's garage. When defendant "was doing the above-head presses," Carlos could see defendant's waistband. Carlos did not see a gun.

Carlos testified that after they lifted weights, the group went to Red Fox, a grocery store on West Market Street. After the police arrived, Carlos heard defendant say, "I got [marijuana] on me." Defendant then ran. Carlos watched defendant run between the small business and the house on the corner. Carlos did not see a gun fall from defendant's pants.

Carlos testified after defendant ran, the officer ran down Mason Street. Carlos saw the officer either drop something or bend over.

Marcus L. Johnson, defendant's cousin, testified he was with Carlos, defendant, and Phil lifting weights on April 2, 2001. During the workout, defendant had removed his shirt. Johnson could see the waistband to the pants, and he did not see a handgun. Johnson also did not see a handgun lying on a bench or car. Before they left the garage, Johnson did not see defendant tuck anything into his pants. Johnson did not recall seeing defendant's cellular phone.

Johnson testified the group decided to walk to Red Fox at approximately 3:30 to 4 p.m. While on Market Street, a police officer arrived. Defendant whispered he had marijuana on him and handed the leash to Carlos. Defendant then ran between two buildings. One officer followed defendant. Other officers were also in the area. Johnson

did not see defendant drop anything in the intersection of Mason and Market Streets.

Phil testified he was defendant's brother, and he had been convicted of a felony nine years earlier. Phil confirmed the testimony of Carlos and Johnson regarding the weight lifting. He did not see defendant in possession of a handgun, and he believed he would have noticed a weapon of that size if it had been in defendant's waistband.

Phil testified that when the police arrived, defendant turned to him, said "I got [marijuana] on me," and started running. Defendant ran between the house and the "broken down business." Phil watched defendant run. Phil did not see anything fall from defendant's pants.

Defendant also testified on his behalf. During the April 2, 2001, workout, he was wearing a sweatsuit with an elastic waistband and a T-shirt. Defendant denied having the handgun. At Red Fox, defendant waited outside with his dog while the others went inside. While waiting, he purchased $10 worth of marijuana and placed the marijuana in his sock. When the police officer arrived, defendant told his brother, "hold my dog, I got [marijuana] on me." Defendant took a step back and then ran. Defendant ran through the abandoned house on Market Street. Defendant further testified that when he was found in the tree, he did not hold his cellular phone in his hand.

Chad Reeser, formerly a Bloomington police officer, testified for the State in rebuttal. Reeser drove to the intersection of Market and Mason Streets after he heard on the radio that Love had seen defendant. Reeser saw Love approaching defendant and heard Love telling defendant to give someone his dog and come to him. About the time Reeser opened his door, defendant fled. Defendant ran behind Reeser's squad car to the intersection of Market and Mason. Defendant did not run between the two buildings.

As defendant ran through the intersection, Reeser ran behind him and saw a handgun fall from the rear waistband of his sweatpants. When he saw the handgun fall, Reeser was four or five feet behind defendant. When Reeser looked back to insure the handgun was secured, he saw Love grab the handgun.

In closing arguments, the State referred to defendant, on more than one occasion, as a "four-time felon." In its instructions, the trial court repeatedly listed defendant's four prior felony convictions. The court did instruct the jury to consider the convictions only to the extent they establish defendant was a felon:

> "Ordinarily evidence of a defendant's prior conviction of an offense may be considered by you only as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense for which he was charged.

However, in this case, because the State must prove beyond a reasonable doubt the proposition that the defendant was previously convicted of aggravated battery, intimidation[,] and delivery of a controlled substance, you may consider evidence of a defendant's prior conviction of the offenses of aggravated battery, intimidation[,] and delivery of a controlled substance only for the purpose of determining whether the State has proved that proposition."

The jury found defendant guilty of unlawful possession of a weapon by a felon. On March 14, 2002, defendant filed a posttrial motion for judgment notwithstanding verdict or for new trial, which the trial court denied. On May 7, 2002, the court sentenced defendant as stated. This appeal followed.

## II. ANALYSIS

### A. Constitutionality of the
### Unlawful-Possession-of-a-Weapon-by-a-Felon Statute

Defendant argues the unlawful-possession-of-a-weapon-by-a-felon statute (720 ILCS 5/24—1.1(a) (West 2000)) is unconstitutional because it requires no culpable mental state and permits a felony conviction based on innocent conduct. Defendant asserts the following as an example of innocent conduct unconstitutionally criminalized under section 24—1.1(a):

"A Good Samaritan, who has been convicted of any felony but has not been granted relief under [s]ection [24—1.1 of the Criminal Code], is walking down the street and happens upon a gun. Not wanting the neighborhood children to find the gun, the Good Samaritan takes the gun and is on her way to the police station to turn it in, but gets stopped for speeding before she can do so, and the gun is recovered. Depending on the prior felony, she is guilty of at least a Class 3 felony, and a sentence of imprisonment of up to 14 years, even though she had no culpable mental state."

In support of his argument, defendant relies on a number of Illinois Supreme Court cases that overturned statutes that swept too broadly: *People v. Wright*, 194 Ill. 2d 1, 740 N.E.2d 755 (2000); *In re K.C.*, 186 Ill. 2d 542, 550, 714 N.E.2d 491, 495-96 (1999); *People v. Zaremba*, 158 Ill. 2d 36, 630 N.E.2d 797 (1994); and *People v. Wick*, 107 Ill. 2d 62, 481 N.E.2d 676 (1985).

When we consider the constitutionality of a statute, we presume that statute is constitutional. *Wright*, 194 Ill. 2d at 24, 740 N.E.2d at 766. The challenger to the statute has the burden of proving its invalidity. *K.C.*, 186 Ill. 2d at 550, 714 N.E.2d at 495. Although "the legislature has wide discretion to establish penalties for criminal offenses," its "discretion is limited by the constitutional guarantee that

a person may not be deprived of liberty without due process of law." *Wright*, 194 Ill. 2d at 24, 740 N.E.2d at 766-67. To determine whether legislation complies with substantive due process, we apply the rational-basis test and will uphold a statute under this test if it " 'bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective.' " *Wright*, 194 Ill. 2d at 24, 740 N.E.2d at 767, quoting *People v. Adams*, 144 Ill. 2d 381, 390, 581 N.E.2d 637, 642 (1991).

■ Defendant's case law demonstrates the Supreme Court of Illinois has held "a statute violates the due process clauses of both the Illinois and the United States Constitutions if it potentially subjects wholly innocent conduct to criminal penalty without requiring a culpable mental state." *K.C.*, 186 Ill. 2d at 551, 714 N.E.2d at 496; *Wright*, 194 Ill. 2d at 25, 740 N.E.2d at 767; *Zaremba*, 158 Ill. 2d at 42, 630 N.E.2d at 800. In *K.C.*, the court held sections 4—102(a)(1) and (a)(2) of the Illinois Vehicle Code (625 ILCS 5/4—102(a)(1), (a)(2) (West 1996)) violate due process. *K.C.*, 186 Ill. 2d at 553, 714 N.E.2d at 497. Section 4—102 provided, in relevant part:

" '(a) It is a violation of this [c]hapter for:

(1) A person, without authority to do so, to damage a vehicle or to damage or remove any part of a vehicle;

(2) A person, without authority to do so, to tamper with a vehicle or go in it, on it, or work or attempt to work any of its parts, or set or attempt to set it in motion[.]' " *K.C.*, 186 Ill. 2d at 545, 714 N.E.2d at 493, quoting 625 ILCS 5/4—102 (West 1996).

At argument in *K.C.*, the State conceded the relevant sections made "criminals out of people who decorate the bride and groom's car during a wedding ceremony, get in a traffic accident, or inadvertently hit a baseball through a neighbor's windshield." *K.C.*, 186 Ill. 2d at 553, 714 N.E.2d at 497. The court concluded "[a]lthough the prevention of vandalism and malicious mischief are undoubtedly laudable goals," the goal of protecting innocent conduct from prosecution is "an equally laudable goal." *K.C.*, 186 Ill. 2d at 553, 714 N.E.2d at 497. Because these sections potentially punished innocent conduct with "wholly innocent motives," the court held the statutes were unconstitutional. *K.C.*, 186 Ill. 2d at 553, 714 N.E.2d at 497.

In *Zaremba*, the court found section 16—1(a)(5) of the Criminal Code (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(5)) unconstitutional on similar grounds. *Zaremba*, 158 Ill. 2d at 42, 630 N.E.2d at 800. Section 16—1(a)(5) stated theft was committed when one does the following:

" 'Obtains or exerts control over property in the custody of any law enforcement agency which is explicitly represented to him by any law enforcement officer or any individual acting in behalf of a law

enforcement agency as being stolen.' " (Emphasis omitted.) *Zaremba*, 158 Ill. 2d at 39-40, 630 N.E.2d at 798, quoting Ill. Rev. Stat. 1989, ch. 38, par. 16—1.

The purpose of section 16—1(a)(5) was "to enable law enforcement officers to conduct undercover operations aimed at breaking up fencing operations" (*Zaremba*, 158 Ill. 2d at 42, 630 N.E.2d at 800), but the statute criminalized "the actions of a police evidence technician who took from a police officer for safekeeping the proceeds of a theft" (*Zaremba*, 158 Ill. 2d at 38, 630 N.E.2d at 798).

In *Wick*, the court found a portion of the aggravated-arson statute violated due process. Under the relevant statute, aggravated arson was a Class X felony and was defined in relevant part as follows:

" '(a) A person commits aggravated arson when by means of fire or explosive he knowingly damages, partially or totally, any building or structure, including any adjacent building or structure, and *** (3) a fireman or policeman who is present at the scene acting in the line of duty, is injured as a result of the fire or explosion.' " *Wick* 107 Ill. 2d at 64, 481 N.E.2d at 677-78, quoting Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1.

The court found the statute was not reasonably related to its purpose because it required no unlawful purpose in setting the fire, as the lesser arson statute did, and therefore subjected innocent conduct to a Class X felony conviction. The court cited as an example "a farmer who demolishes his deteriorated barn to clear space for a new one is liable for a Class X penalty if a fireman standing by is injured at the scene." *Wick*, 107 Ill. 2d at 66, 481 N.E.2d at 678.

■ The purpose of section 24—1.1 is to protect the public in "keeping firearms from convicted felons." *People v. Jackson*, 269 Ill. App. 3d 851, 857, 646 N.E.2d 1299, 1304 (1995). We find the statute is reasonably designed to remedy the evils the legislature has found to be a threat to public safety.

Section 24—1.1 does not attempt to punish "wholly innocent conduct" without a culpable mental state. The conduct of the Good Samaritan, although benevolent, is not innocent. It is not analogous to the conduct of a lab technician who takes control of evidence from a police officer and thereby commits theft (*Zaremba*, 158 Ill. 2d at 38-42, 630 N.E.2d at 798-800) or to the conduct of a child who accidentally hits a baseball through the windshield of his neighbor's car and becomes a criminal (*K.C.*, 186 Ill. 2d at 553, 714 N.E.2d at 497).

The act of the Good Samaritan felon in knowingly possessing the weapon is not innocent conduct. See *People v. Grant*, 339 Ill. App. 3d 792, 806-07, 791 N.E.2d 100, 111 (2003) (rejecting a similar hypothetical and argument). If the Good Samaritan has no other reasonable op-

tion, such as calling the police or asking another adult to secure the weapon, the necessity defense serves the dual purpose of protecting the public both from a stray weapon and from felons possessing weapons. See generally *People v. Roberson*, 335 Ill. App. 3d 798, 801, 780 N.E.2d 1144, 1147 (2002) (applying section 7—13 (720 ILCS 5/7—13 (West 2000)) and stating "conduct that would otherwise be an offense is justified if the defendant was (1) without blame in occasioning or developing the situation and (2) reasonably believed the conduct was necessary to avoid a public or private injury greater than the injury that might reasonably result from her own conduct"); 720 ILCS 5/24—1.1(b), (d) (West 2000) (denying the necessity defense to only inmates in possession of prohibited weapons).

Because section 24—1.1(a) is reasonably designed to achieve its purpose, defendant has not overcome the presumption section 24—1.1(a) is constitutional.

## B. Stipulation of Prior Conviction

Defendant next contends the trial court erroneously refused his request to stipulate his prior convictions in violation of our holding in *People v. Peete*, 318 Ill. App. 3d 961, 743 N.E.2d 689 (2001). Defendant acknowledges the error was not raised in his posttrial motion but contends (1) we may review the trial court's decision under the plain-error doctrine, and (2) defense counsel was ineffective.

■ To convict a defendant for unlawful possession of a weapon by a felon, the State must prove, among other things, the defendant is a felon:

> "It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under [s]ection 24—1 of this [a]ct or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24—1.1(a) (West 2000).

In *Peete*, we determined the trial court erred when it refused defendant's proposed stipulation to his prior felony convictions as proof of his status as a felon. The defendant, who was charged with unlawful possession of a weapon by a felon, offered to stipulate his prior felony convictions for residential burglary and aggravated battery. The court refused the defendant's stipulation and permitted the State to publish the residential burglary conviction to the jury. *Peete*, 318 Ill. App. 3d at 964, 743 N.E.2d at 692. A jury found the defendant guilty, and the defendant appealed. *Peete*, 318 Ill. App. 3d at 964-65, 743 N.E.2d at 692.

We began our analysis in *Peete* by considering whether Illinois courts should adopt the holding in *Old Chief v. United States*, 519 U.S.

172, 136 L. Ed. 2d 574, 117 S. Ct. 644 (1997). In *Old Chief,* 519 U.S. at 174, 136 L. Ed. 2d at 584, 117 S. Ct. at 647, the defendant was charged with violating a federal law that prohibited a convicted felon from possessing a firearm. The *Old Chief* defendant offered to stipulate to his prior felony conviction, the government refused, and the district court agreed with the government. *Old Chief,* 519 U.S. at 175-77, 136 L. Ed. 2d at 585, 117 S. Ct. at 648.

The Supreme Court concluded that although the record of the defendant's felony conviction was relevant, under Rule 403 of the Federal Rules of Evidence the " 'probative value' " of the prior conviction was " 'substantially outweighed by the danger of unfair prejudice.' " *Old Chief,* 519 U.S. at 180, 136 L. Ed. 2d at 587, 117 S. Ct. at 650, quoting Fed. R. Evid. 403. The Supreme Court further concluded "the most a jury needs to know about the prior-conviction element is that the conviction admitted by the defendant falls within the class of crimes enumerated in the statute." *Peete,* 318 Ill. App. 3d at 967, 743 N.E.2d at 694, citing *Old Chief,* 519 U.S. at 190-91, 136 L. Ed. 2d at 594, 117 S. Ct. at 655.

After finding the laws in *Old Chief* were similar to those in Illinois, we decided to adopt *Old Chief*'s holding: "[T]he Supreme Court's approach in *Old Chief* regarding stipulations on prior convictions that are an element of the crime charged is the proper procedure." *Peete,* 318 Ill. App. 3d at 969, 743 N.E.2d at 695.

In *People v. Walker,* 335 Ill. App. 3d 102, 112, 779 N.E.2d 268, 276 (2002), the Second District opted to follow *Peete* and adopted *Old Chief.* Currently, the issue is before the Supreme Court of Illinois. *Walker,* 335 Ill. App. 3d 102, 779 N.E.2d 268, *appeal allowed,* 202 Ill. 2d 696, 787 N.E.2d 180 (No. 95285).

The State first contends *Old Chief, Peete,* and *Walker* hinge on the existence of unfair prejudice to the defendants. The State relies upon *People v. Parker,* 335 Ill. App. 3d 474, 781 N.E.2d 1092 (2002), as establishing the "[f]ailure to accept a defendant's stipulation to his prior convictions to prove unlawful possession of a weapon by a felon is not error if it is not unduly prejudicial." In *Parker,* the First District examined *Old Chief, Peete* and *Walker* and concluded it need not decide whether to follow *Old Chief,* because "[b]oth *Peete* and *Walker* make clear that their respective analyses turn on the fact that the evidence against the defendants in those cases was not overwhelming." *Parker,* 335 Ill. App. 3d at 486, 781 N.E.2d at 1103.

■ We disagree with the State's analysis and *Parker.* The *Peete* and *Walker* decisions do not turn on whether the evidence against a defendant is overwhelming. Both first held it is *error* to refuse the defendant's stipulation to prior convictions to prove unlawful posses-

sion of a weapon by a felon. *Peete*, 318 Ill. App. 3d at 969, 743 N.E.2d at 695; *Walker*, 335 Ill. App. 3d at 112, 779 N.E.2d at 276. Only after finding the trial court erred in admitting evidence of the prior convictions did the *Peete* and *Walker* courts consider the State's arguments the defendants' convictions were nevertheless not harmed or prejudiced by the error. *Peete*, 318 Ill. App. 3d at 969, 743 N.E.2d at 695 ("The State's final contention is that, even if the stipulation should have been allowed, the error did not prejudice defendant"); *Walker*, 335 Ill. App. 3d at 113, 779 N.E.2d at 277 ("Finally, the State argues that, unlike in *Peete*, no reversible error occurred because the evidence here was overwhelming").

Under *Peete*, the trial court erred by refusing defendant's stipulation and admitting the four felony convictions. The error, however, is not *reversible* if it is harmless beyond a reasonable doubt. See *People v. Wilkerson*, 87 Ill. 2d 151, 157, 429 N.E.2d 526, 528 (1981).

The State, applying *Parker*, then argues defendant's verdict was not harmed or prejudiced by the entry of the convictions because (1) a limiting instruction "greatly diminished" the prejudice, and (2) the evidence overwhelmingly supports defendant's convictions. We disagree.

The evidence is not so overwhelming and the limiting instruction was insufficient to overcome the potential of unfair prejudice arising from the admission of defendant's *four* prior felonies. Other than the testimony of two police officers, no other evidence, such as fingerprints, linked the handgun to defendant. The testimony of five witnesses, including one who knew defendant by name only, testified defendant did not run where the officers testified the handgun was found. The decision of whether reasonable doubt existed boiled down to a credibility determination—a determination potentially affected by the admission of defendant's convictions for aggravated battery, intimidation, and two counts of unlawful delivery of a controlled substance. Heightening the potential for prejudice were the repeated references to the four felony convictions in closing arguments and during the trial court's instructions. For example, the State, obviously aware of the stigma and influence of the earlier convictions, twice called defendant "a four-time convicted felon." We cannot find defendant was not harmed or prejudiced by this error.

The State further argues the evidence was properly admitted for impeachment purposes. The State contends defendant testified and each of the convictions was within the 10-year limit, and thus, the convictions were properly admitted. We disagree. This is not a *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695 (1971), issue. Once a prior conviction is admitted under a *Peete* and *Old Chief* analysis, that

conviction may be used for impeachment against a testifying defendant. *People v. Hester*, 271 Ill. App. 3d 954, 961, 649 N.E.2d 1351, 1357 (1995). However, such impeachment would be limited to a single felony conviction—the conviction required to prove defendant's status as a felon. The trial court admitted all four convictions based on a mistaken belief the Supreme Court of Illinois had ruled that it must do so. This mistake was exacerbated because four felony convictions are involved.

Defendant concedes he failed to raise this argument in a posttrial motion. He maintains, however, we may review and reverse under the plain-error rule. We agree. The plain-error rule, a limited exception to forfeiture, may be invoked if (1) the evidence is closely balanced or (2) the error is so fundamental it may have denied the defendant a fair hearing. *People v. Beals*, 162 Ill. 2d 497, 511, 643 N.E.2d 789, 796 (1994). We find plain error under both prongs. The evidence was closely balanced, and the error was fundamental. The jury should have known defendant was a felon and could not possess a firearm. This jury should not have been informed of defendant's four felony convictions by name and *reminded* several times by the prosecution that defendant was a four-time convicted felon.

We therefore reverse defendant's conviction and remand the cause.

## C. *Voir Dire*

Having determined defendant is entitled to a new trial, we need not decide whether the trial court's failure to transcribe *voir dire* is reversible error. We address the issue only to stress Supreme Court Rule 608(a)(9) (177 Ill. 2d R. 608(a)(9)) ought to be followed. Perhaps using a court reporter at *voir dire* is not an efficient use of scarce resources, but that is a decision to be left to the supreme court. The failure to provide a court reporter for *voir dire* should not be an issue on appeal.

## III. CONCLUSION

We reverse defendant's conviction. We find the evidence permits retrial without offending double jeopardy. We remand for a new trial consistent with this opinion.

Reversed and remanded.

MYERSCOUGH, P.J., and STEIGMANN, J., concur.